HELEN DOMBROWSKI, LESTER LANGREHR AND STEVE BOZZONE, PROSECUTORS, v. THE STATE OF NEW JERSEY, DEFENDANT.

Argued October term, 1933—Decided October 20, 1933.

Before Justices CASE, BODINE and DONGES.

For the prosecutors, *Nathan L. Goodman.*

For the defendant, *Charles A. Rooney* and *James A. Hamill.*

The opinion of the court was delivered by

BODINE, J. The prosecutors seek to review a summary conviction under the Disorderly Persons act, as amended. *Pamph. L.* 1933, *p.* 216. The act, so far as pertinent, provides as follows: "Any person who shall possess, give, barter, sell, or otherwise dispose of, or order to give, barter, sell, or otherwise dispose of any ticket, tickets, slip, paper or other memo-

randa or any share or interest in any ticket, tickets, slip or memoranda in any number game or who shall hold, conduct or have any interest in any number game or who shall receive any money, goods or thing in action in connection with any number game shall be deemed and adjudged to be a disorderly person."

If we could entertain any doubt as to the meaning of the term "number game," a subsequent declaration by the legislature is illuminating if not dispositive. It is as follows: "Number game, as set forth in this act, is defined as any betting on any number or numbers, or arrangement of numbers, on or according to any plan or method whatsoever." Act of August 30th, 1933.

In 1897, the constitution of the state was amended by the following provisions, article 4, section 7, subdivision 2 (1 *Comp. Stat., p.* lxix) : "No lottery shall be authorized by the legislature or otherwise in this state, and no ticket in any lottery shall be bought or sold within this state, nor shall pool-selling, bookmaking or gambling of any kind be authorized or allowed within this state, *nor shall any* gambling device, practice or *game of chance now prohibited by law be legalized, or the remedy, penalty or punishment now provided therefor be in anyway diminished."* The purpose of the amendment was to forever bar gambling from the state.

Sections 57, 58 and 59 of the Crimes act (*Pamph. L.* 1898, *p.* 810 ; 2 *Comp. Stat., p.* 1764), treat as high misdemeanors offenses connected with a lottery or lottery policy game. Like provisions of the law were in existence when the constitutional amendment was adopted. Gaming, betting generally, horse racing for money and so on are mere misdemeanors. See sections 60 to 64, inclusive, of the Crimes act. Bookmaking or pool-selling is more severely dealt with by section 65, while other provisions of the act relate to slot machines. Obviously, gambling may be carried on in as many different ways as human ingenuity can devise. The common law of England upheld wagering contracts. Betting and the playing of games of chance were not always prohibited in colonial times. In fact, lotteries were used as a means of raising funds for the College of New Jersey, now Princeton University, and tickets

were freely offered for sale and advertised in the public press. In fact, after the Declaration of Independence an act was passed to prevent the counterfeiting or forging of the lottery tickets of the United States. *Pamph. L.* 1777, *p.* 13. Anyone convicted thereunder was to be punished with death. Those participating in the United States lottery were, however, not subject to the penalties provided in a Colonial act of 1774 designed to suppress lotteries. The trustees of the Presbyterian churches at Elizabethtown, New Brunswick, Princeton, Newton, Bridgeton and Middletown after the Revolution were authorized to conduct lotteries in order to raise money to build edifices. The Episcopal church was not slow in securing like privileges. The school man saw his opportunity and by this means the inhabitants of Newark furnished their academy. By 1797, the lottery scheme must have been too much of a good thing because the legislature passed an act declaring a lottery a common nuisance, and those participating punishable therefor. *Pamph. L., p.* 166. But by 1815, the Union Turnpike Company was authorized to raise money by lottery in order to pay its debts. *Pamph. L., p.* 165.

As before noted, the amendment of the constitution referred to has placed a ban upon a legislative change in the penalty or punishment provided for the suppression of lotteries. Obviously, if the number game is a lottery the legislature may not designate those who offend as disorderly persons punishable by imprisonment of no more than ninety days. Those participating in the maintenance of a lottery or the distribution of tickets therein must be indicted by a grand jury and, if convicted, they are guilty of a high misdemeanor. The constitution prohibits a change and until the fundamental law is changed its provisions are controlling and the legislature may not disregard them.

The Supreme Court in *State* v. *Lovell,* 39 *N. J. L.* 461, defined a lottery as follows: "A lottery is defined as being a scheme for the distribution of prizes by chance (*Bouv. Law Dict.*), a game of hazard, in which small sums are ventured for the chance of obtaining a larger value, either in money or other valuables. Worcester's Dictionary. *Where a pecuniary consideration is paid, and it is determined by lot*

*or chance, according to some scheme held out to the public, what the party who pays the money is to have for it, or whether he is to have anything, it is a lottery. State* v. *Clarke,* 33 *N. H.* 329; *Hull* v. *Ruggles,* 56 *N. Y.* 424." Like definitions are universally adopted. 38 *C. J.* 286.

In a number game, the winner is determined by chance according to some scheme held out to the public by which the person who pays is to have something if certain numbers in a certain manner occur. A number game was played for years with the last three figures of the federal clearing house balance. The popularity of the game caused such widespread evil that the United States treasury was obliged to omit the necessary figures from its published balance sheets. Since the numbers, by which the winner is determined, occur by chance the scheme, having all the other elements of a lottery, is such. The legislature is powerless to lessen the punishment for the offense even if it would be desirable so to do.

The constitutional requirements respecting offenses against the lottery law may not be relaxed. Arrest and indictment afford just as speedy and effective a method for the suppression of crime, if vigorously pursued, as proceedings under the Disorderly Persons act. But even if they do not, the remedy is by change in the organic law.

This makes it unnecessary for us to examine the other grounds urged for reversal.

The convictions are set aside.