95 N.J. Super. 103 (1967)
230 A.2d 157
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES L. GATTLING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1967.
Decided May 11, 1967.
*106 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Robert I. Ansell argued the cause for appellant (Messrs. Anschelewitz, Barr & Ansell, attorneys).
Mr. Thomas L. Yaccarino, Assistant County Prosecutor, argued the cause for respondent (Mr. Vincent P. Keuper, Monmouth County Prosecutor, attorney).
The opinion of the court was delivered by LEONARD, J.A.D.
Defendant appeals from a judgment of conviction for knowing possession of lottery or lottery policy slips (N.J.S. 2A:121-3(b)), entered following a jury trial.
The State adduced testimony that on December 3, 1966 defendant was possessed of certain slips pertaining to the business of a "numbers" game. At the conclusion of the State's case defendant moved for a judgment of acquittal on the grounds, inter alia, that the above noted statute did not prohibit possession of slips pertaining to the "numbers" game. This motion was denied.
Defendant reiterates the same argument as a basis for the reversal of his conviction. Implied in his position is the concession that the State's proof establishes that the slips in question did pertain to the business of "numbers."

I
N.J.S. 2A:121-3(b) provides as follows:
"Any person who:

* * * * * * * *
b. Knowingly possesses any paper, document, slip or memorandum that pertains in any way to the business of lottery or lottery policy, so-called, whether the drawing has taken place or not;

* * * * * * * *
Is guilty of a misdemeanor."
*107 Defendant points to the statutory language "whether the drawing has taken place or not" and argues that since the State's gambling expert, Detective Andrew B. Manning, testified that in the "numbers" game the winner is not selected, as it is for example in the Irish Sweepstakes, by a physical "drawing," defendant cannot be found guilty of a violation of the statute.
Detective Manning identified the modus operandi of the "numbers" game to be as follows: The winning number is determined by the last three digits of the daily total "mutual [sic] handle" (bets placed) at a designated race track.
Although the specific point here made has never before been advanced for adjudication, our courts in prosecutions for violations of the statute here involved, and of its predecessor, have consistently regarded the numbers game as a prohibited lottery. In Dombrowski v. State, 111 N.J.L. 546 (Sup. Ct. 1933), the court said:
"In a number game, the winner is determined by chance according to some scheme held out to the public by which the person who pays is to have something if certain numbers in a certain manner occur. * * * Since the numbers, by which the winner is determined, occur by chance the scheme, having all the other elements of a lottery, is such." (at p. 549)
In State v. Rucker, 46 N.J. Super. 162, 166 (App. Div. 1957), certification denied 25 N.J. 102 (1957), the court, in affirming a conviction for the possession of cards pertaining to a "numbers" game, declared, "[t]here can be no doubt that the `numbers business,' so-called, falls within the classification of `lottery or lottery policy.'"
See also: State v. Friedman, 135 N.J.L. 419 (Sup. Ct. 1947), affirmed o.b. 136 N.J.L. 634 (E. & A. 1948), and State v. Gawronski, 9 N.J. Super. 51 (App. Div. 1950). Cf. State v. Melamed, 93 N.J. Super. 573 (App. Div. 1967).
It is in this judicial atmosphere that we evaluate defendant's argument as to a proper construction of N.J.S. 2A:121-3(b). He urges strict construction thereof. Although, *108 generally speaking, criminal statutes are to be so construed, State v. Meinken, 10 N.J. 348 (1952), the rule of strict construction does not mean that the Legislature's intention should be disregarded. State v. Edwards, 28 N.J. 292, 298 (1958). A reasonable interpretation should be made based upon the legislative purpose as revealed by the composite thrust of the whole statute. State v. Congdon, 76 N.J. Super. 493, 500 (App. Div. 1962).
R.S. 2:147-3(b), which was the statutory predecessor to N.J.S. 2A:121-3(b), did not contain the present clause "whether the drawing has taken place or not." These words were added in the statutory revision of Title 2 of the Revised Statutes in 1951. However, all the other relevant sections of R.S. 2:147 had contained provisions relating to a "drawing." Likewise, similar language is found in the other sections of N.J.S. 2A:121, the 1951 revision. A reading of these statutes as a whole clearly indicates a legislative intention to prohibit every type of lottery and to make all persons who engage in any facet of lottery activity guilty of a misdemeanor. This intention is unequivocally expressed in N.J.S. 2A:121-6 (L. 1961, c. 39), wherein the Legislature defined "lottery" to mean a distribution of prizes by chance in return for consideration in the form of money or other valuable thing.
Defendant argues, in further support of this point, that N.J.S. 2A:170-18 "renders inescapable the conclusion that the words `number game' and `lottery' are not interchangeable in the eyes of the Legislature and that neither term includes the other." He bases this contention upon the fact that the cited section which creates a disorderly persons offense, distinguishes between possession of "lottery slips * * * pertaining to a lottery" and possession of "slips * * * in any way pertaining to the business of a number game."
However, in State v. Labato, 7 N.J. 137 (1951), the court affirmed the action of the trial court in sustaining a plea of autrefois convict where the defendant was first convicted of possession of number slips under the Disorderly Persons Act, R.S. 2:202-16 (the predecessor to N.J.S. 2A:170-18) and *109 thereafter convicted for the same conduct under R.S. 2:147-3 (the predecessor to N.J.S. 2A:121-3(b)). The court said:
"This statute and the Crimes Act deal merely with different degrees of the same offense. * * * The provision of the Disorderly Persons Act was a police measure designed to afford a speedy and effective remedy where the offense was less aggravating in circumstance. The two prosecutions concern the one supposed act of possession. * * *" (at p. 150; emphasis added)
To restrict the criminal responsibility for the knowing possession of number slips solely to disorderly conduct would be plainly contrary to all the above noted indicia of the legislative intent and to the historical recognition thereof by the courts. Further, such a result would mean that any such offender, even though he were a part of a large gambling syndicate, would be subject only to the lesser punishment imposed for disorderly persons violations. This would be contrary to sound public policy, see State v. Ivan, 33 N.J. 197, 202 (1960); State v. DeStasio, 49 N.J. 247 (1967); and ought not to be lightly concluded to represent the legislative purpose in this area.
We agree with the contention of the State that "[t]he word `drawing' is used in a generic sense, meaning any chance event upon which the proscribed activity is based. The inclusion of the words, `whether the drawing has taken place or not,' was not meant to limit the effectiveness of the statute, but to extend it. This extension was pursued to preclude a defendant charged with `possession' from claiming that the event had not taken place yet."
A similar argument, i.e., that the "numbers" game was not a lottery because "there must be a physical drawing of the certificate or ticket," was rejected in Forte v. United States, 65 App. D.C. 355, 83 F.2d 612, 614, 105 A.L.R. 300 (D.C. Cir. 1936), even though section 863 of the District of Columbia Code, under which defendant therein was prosecuted, contained provisions similar to those here, referring to a "chance of drawing or obtaining a prize, to be drawn in any lottery * * *."
*110 We conclude that N.J.S. 2A:121-3(b), which prohibits the possession of "any paper, document, slip or memorandum that pertains in any way to the business of lottery or lottery policy * * *," includes possession of any of these materials pertaining to the business of "numbers" or the "numbers" game. Thus, defendant's first point is without merit.

II
Defendant next contends that since he was charged with unlawful possession of number slips only on December 3, 1965, it was prejudicial to him to allow in evidence, and to refuse to strike, testimony by Detective Manning that he had defendant under surveillance on November 23, 24 and 27 of that year, and that on these occasions defendant "would make stops" at apartment houses in Neptune Township and Asbury Park. Assuming that this testimony tended to indicate that defendant was writing "numbers" or otherwise engaged in the "number business" on the above mentioned dates, the evidence was nevertheless relevant to the issue of whether his possession of the slips on December 3, 1965 was a knowing one. State v. Lanzo, 44 N.J. 560, 566 (1965). Its admission was not error.

III
We consider next defendant's contention that his sentence was improper because it constituted punishment for a crime with which he was not charged, or was based upon erroneous information in the presentence report.
The sentencing judge imposed a sentence of one to two years in State Prison upon defendant. Immediately prior to the imposition thereof the court said:
"* * * it is well known around Asbury Park that anybody who wants to play the numbers game can go see Mr. James L. Gattling and he will take the bet. * * * But on the other hand people can't go writing book or writing numbers slips from 1940 all the way up until now and just flaunt the law."
*111 In response to our request at oral argument, and with the consent of counsel, we have been supplied with a copy of defendant's presentence investigation. It discloses that defendant was convicted of gambling activity in 1940 and again in 1953. No other arrests or convictions of that nature are noted therein. Consequently, it does not support the statements contained in the above-quoted remarks of the sentencing judge. Whether the factual background therefor was personally known to this judge, who was not the trial judge, or whether he was otherwise informed thereof, it was improper for him to rely upon any factual information of this nature not "officially and reliably recorded in the presentence report." State v. Leckis, 79 N.J. Super. 479, 487 (App. Div. 1963). Although we do not imply that the sentence imposed was necessarily excessive (a maximum of up to three years imprisonment and a $1,000 fine could have been imposed, N.J.S. 2A:85-7), we conclude that the court's apparent reliance on unrecorded facts mandates that the sentence be vacated and set aside and that this matter be remanded for the imposition of a new sentence.

IV
Defendant's contention that his sentence was void because it was imposed by the assignment judge pursuant to general Supreme Court directive, rather than by the trial judge is without merit. State v. DeStasio, supra, 49 N.J. 247 (1967).
Defendant further contends that his sentence was also void because it was not the product of a free exercise of discretion by the sentencing judge. This argument is grounded upon the assertion that the Supreme Court has directed that everyone convicted of a gambling crime be sent to State Prison. This assertion is not true. DeStasio, supra. Additionally, in the instant case there is no proof in the record that the sentencing judge so interpreted the existing Supreme Court directive or that he did not exercise his own unfettered *112 discretion. In any event, since a new sentence is to be imposed, this argument is moot.
The conviction is affirmed, the sentence vacated and set aside, and the matter remanded for the imposition of a new sentence.
So ordered.