STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
EGON LEGGEADRINI, DEFENDANT-APPELLANT.

Argued October 18, 1977—Decided December 7, 1977.

*Mr. Thomas S. Higgins* argued the cause for appellant.

*Mr. Frederick S. Cohen,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

PASHMAN, J. Upon a plea of *non vult* to an indictment for murder, defendant Egon Leggeadrini was sentenced to imprisonment for a term of 25 to 30 years, the latter being the equivalent of the maximum sentence permitted upon a conviction of murder in the second degree. *See N. J. S. A.* 2A:113–3, 4. The judge denied a motion made pursuant to *R.* 3:21–10 to reduce the sentence. The Appellate Division affirmed in an unreported opinion. In this appeal, defendant attacks the severity of that sentence.[1] In weighing the factors relevant to appellate review of sentences, we are persuaded that under the totality of the circumstances presented in this case the sentence imposed was manifestly excessive. Accordingly, we modify the judgment of the Appellate Division.

Leggeadrini was charged with murder as a result of his fatal shooting of a 26 year old neighbor on the evening of July 24, 1975. The incident was precipitated by a heated dispute between the victim and defendant and his wife over possible damage to defendant's property caused by the victim's ballplaying activities in the immediate vicinity of defendant's front yard. The controversy was further exacerbated

---

[1]Defendant also received a suspended sentence of three to five years on his guilty plea to an indictment under *N. J. S. A.* 2A:151–5 for murder while armed. That disposition is not challenged in this appeal.

by alleged abusive remarks made by the victim to Mrs. Leggeadrini prior to defendant's involvement in the argument. There apparently had been previous confrontations between defendant's wife and the victim concerning the same issue which, rather than preventing a recurrence of the situation, had allowed the problem to fester.

On the date of the tragedy, Leggeadrini overheard the argument between his wife and the victim from inside his home. Shortly after his wife reentered the house, he proceeded outside to argue further with the victim and to rebuke him for the manner in which he had spoken to Mrs. Leggeadrini. When the victim declined to continue the argument any longer, defendant stated that he would shoot him. Leggeadrini immediately grabbed a .22 caliber rifle from inside the doorway of the house, cocked it and shot the victim, who then ran across the street to his house where he collapsed and died. The defendant went back into his house and summoned the police. In defendant's version of the incident, he intended to do no more than "hurt" the victim, claiming that he would have fired more than one shot had he intended to kill. Leggeadrini was arrested the next day and subsequently released on bail. After initially pleading not guilty to the charges, he retracted those pleas and entered pleas of *non vult* to the murder indictment and of guilty to the murder while armed indictment.

At the December 1, 1975 sentencing, defendant's counsel informed the court that defendant's plea of *non vult* had not been the product of a plea bargain and that consequently the State was making no recommendation as to sentence. No objections were made to the contents of the presentence report or to the psychiatric evaluation of defendant. These documents presented a composite picture of an individual who had been a solid member of the community and enjoyed a stable family life. At the time of the criminal incident Leggeadrini was 66 years old. Prior to his retirement in 1972, he had been a productive citizen holding continuous employment at the same job for 31 years. Leggeadrini had no

previous criminal record. He and his wife lived on modest pension and social security benefits which he supplemented with part-time work for the local school board.

Defense counsel alluded to defendant's age, lack of prior criminal involvement, stable background and extreme remorse as personal factors mitigating any need for a substantial period of incarceration. He argued further that the offense was an isolated incident — an over-reaction to momentary stress unlikely to be repeated. In a brief statement to the court, defendant displayed perplexity as to how a man of his temperament who had minded his own business for many years could have fallen into such a predicament. He reiterated his version of the non-intentional nature of the killing.

The sentencing judge agreed that rehabilitation was not the primary sentencing consideration with respect to murders committed in emotion-laden circumstances. The minimal likelihood of repetition of such a "once-in-a-lifetime" act substantially lessens the need for "specific deterrence" of the offender. The effect of the sentence on society as a deterrent to such conduct was given primary consideration by the judge and the non-intentional nature of the offense was given little weight. He felt defendant's conduct contained all the elements of second degree murder and warranted substantial punishment because of the seriousness of the harm resulting from a relatively trivial provocation. The sentence imposed was accompanied by a recommendation that it be served in a minimum security facility. The judge's reasons for the sentence imposed, R. 3:21–4(e), were orally stated at the hearing.

Defendant made a timely motion for reconsideration of his sentence which was heard by the same judge on January 9, 1976. Defendant's counsel acknowledged that no change of circumstances was presented, but again emphasized that mitigating circumstances militated against the severity of the sentence imposed. In support of this contention, he again cited defendant's age, lack of previous criminal record, em-

ployment stability, long-term residency, good citizenship and contributions to society. Defendant's extreme remorse, as evidenced by voluntary pleas to the charges, was said to demonstrate that his rehabilitation was well under way. The sentencing judge denied the motion and reaffirmed his original sentence, noting that he had weighed all of the factors argued by defense counsel in his previous determination. The judge reiterated his conclusion that defendant had no need of rehabilitation or specific deterrence and stated that his sentence was primarily based on considerations of general deterrence necessitated by the gravity of the offense. The judge then rejected defense counsel's plea for a sentence that offered, in light of defendant's age and life expectancy, a realistic possibility of defendant's eventual return to his family. The judge noted that defendant's age and earliest possible release date had been taken into account in formulating the original sentence.[2]

Defendant appealed the denial of this motion to the Appellate Division, which viewed his attack on the sentence as grounded solely on the contention that defendant's age and first offender status rendered the sentence excessive. In an unreported *per curiam* decision, that contention was summarily rejected and the sentence affirmed as not constituting an abuse of discretion. We granted certification to consider only the claim of excessiveness of sentence. 73 *N. J.* 52 (1977).

Our cases reviewing sentences challenged because of their alleged excessiveness are legion. In the interests of justice, this Court has the power to modify any sentence that is manifestly excessive, even if within statutory limits. *R.* 2:10–3; *State v. Bess,* 53 *N. J.* 10, 18 (1968); *State v. Laws,* 51 *N. J.* 494, 509–510 (1968). The imposition of an

---

[2]The judge noted that no showing had been made that defendant suffered from any physical conditions, other than advanced age, which might tend to adversely affect his life expectancy if incarceration was imposed.

appropriate sentence is entrusted to the sound discretion of the sentencing judge. Thus, the scope of appellate review is normally limited to the question of whether that discretion has been abused by the imposition of a sentence which is manifestly excessive under the particular circumstances of the case. *State v. Knight,* 72 *N. J.* 193, 194–195 (1976); *State v. Milligan,* 71 *N. J.* 373, 395 (1976); *State v. Szima,* 70 *N. J.* 196, 203 (1976); *State v. Dunbar,* 69 *N. J.* 333, 335–336, 338–339 (1976) (Pashman, J., dissenting); *State v. Norfleet,* 67 *N. J.* 268, 290 (1975); *State v. Spinks,* 66 *N. J.* 568, 573 (1975); *State v. Souss,* 65 *N. J.* 453, 455 (1974); *State v. Tyson,* 43 *N. J.* 411, 417 (1964), *cert.* den. 380 *U. S.* 987, 85 *S. Ct.* 1359, 14 *L. Ed.* 2d 279 (1965). We have mandated that sentencing judges consider aggravating and mitigating circumstances with respect to both the offender and the offense. We further require that the reasons for the particular disposition made be set forth for appellate evaluation. *State v. Harris,* 70 *N. J.* 586, 594 (1976); *State v. Poteet,* 61 *N. J.* 493, 496 (1972); *State v. Ivan,* 33 *N. J.* 197, 200–202 (1960); *R.* 3:21–4(e).

 Chief Justice Weintraub observed that "[t]he philosophical justification for 'punishment' has divided men for centuries." The suggested aims of penology have included retribution, rehabilitation, deterrence and protection of the community by sequestration of dangerous persons. *State v. Ivan, supra,* 33 *N. J.* at 199. Of these, deterrence and rehabilitation are the most emphasized, with retribution the least favored. *Id.* at 199-200; *see also State v. Dunbar, supra,* 69 *N. J.* at 339 (Pashman, J., dissenting). Sentencing judges have been admonished to "* * * direct the punishments they impose to the goal of reformation," *State v. Ward,* 57 *N. J.* 75, 82 (1970), while being mindful of their obligation to do justice to society as well as the individual. *State v. Ivan, supra,* 33 *N. J.* at 201. Justice Sullivan recently had occasion to enumerate some of the elements of the complex calculus of sentencing:

\* \* \* In fixing a sentence a judge should consider the gravity of the crime and appropriate punishment therefor, deterrence, protection of the public, rehabilitation and any other factors or circumstances relevant to the particular situation.

[*State v. Jones*, 66 *N. J.* 563, 568 (1975)]

In the course of his seminal statement on this vital aspect of the administration of justice, Chief Justice Weintraub noted that where

\* \* \* the offense has strong emotional roots or is an isolated event unassociated with a pressing public problem, there is room for greater emphasis upon the circumstances of the individual offender.

[*State v. Ivan, supra*, 33 *N. J.* at 202]

This conclusion was bottomed on his skepticism concerning the efficacy of punishment as a deterrent to crimes "\* \* \* steeped in emotional pressures" or which are "\* \* \* isolated excursion[s] beyond the pale of the law induced by engulfing circumstances." *Id.* However, as to other types of crimes, the sentencing judge may properly give paramount concern to the magnitude of the crime and the deterrence of others rather than to the attributes of the offender. A sanction. may be fashioned which will neither diminish the gravity of the offense nor embolden would-be criminals to act with any expectation of leniency or impunity. *Id.* at 202–203; *see State v. Sherwin*, 127 *N. J. Super.* 370, 380 (App. Div. 1974), certif. den. 65 *N. J.* 569 (1974).

The permissible range of punishment for the crime of which this defendant stands convicted varies from thirty years imprisonment to an unspecified minimum. *N. J. S. A.* 2A: 113–4. Thus, we have stressed that the sentencing judge's

\* \* \* broad discretion under the statute requires that an appellate court give particular scrutiny to the sentence so that the punishment imposed is not greater than ought to be inflicted under the circumstances of the case.

[*State v. Bess, supra*, 53 *N. J.* at 18–19]

In that decision we emphasized that a defendant's "degree of moral culpability" could be "tempered" by the factual circum-

stances of a given case even though the homicide fell "within the ambit of second degree murder." *Id.* at 19. Among the mitigating factors in *Bess* was the fact that the defendant had summoned the police immediately after the shooting and cooperated fully with their investigation of the incident.

A number of other factors are appropriately considered in mitigation of punishment. The absence of any prior record of arrests may indicate the inadvisability of incarceration as a means to the rehabilitation goal. *State v. Green,* 62 *N. J.* 547, 566 (1973) ; *State v. Ward, supra,* 57 *N. J.* at 82. A voluntary plea of guilty to a charge may, in appropriate circumstances, evidence "* * * some promise that the defendant can be rehabilitated by a lesser punishment than the circumstances might otherwise require." *State v. Poteet, supra,* 61 *N. J.* at 497. Where the offender is young, rehabilitation is the primary goal of sentencing. *State v. Ward, supra; State v. McBride,* 66 *N. J.* ·577 (1975). The "human cost" incidental to a particular disposition may militate in favor of compromising the otherwise weighty concern for deterrence of others. *See State v. Harris, supra,* 70 *N. J.* at 596. A defendant's "outstanding personal record" is a significant factor as well. *See State v. Hicks,* 54 *N. J.* 390, 392 (1969). Integrated family and community relationships, a stable home environment, and steady employment are compelling indicia of such commendable personal characteristics. *See State v. Miller,* 67 *N. J.* 229, 235 (1975) ; *see also State v. Harris, supra.* While advanced age, *per se,* does not preclude imposition of a custodial sentence, *see State v. Souss, supra* (60 year old defendant), a defendant's age, state of health and the potential effect of incarceration thereon are valid considerations to be weighed by the sentencing judge in determining the appropriate sanction. *Cf. State v. Tumminello,* 70 *N. J.* 187 (1976) ; *Catena v. Seidl,* 68 *N. J.* 224 (1975).

Examination of the aggravating and mitigating factors disclosed in this record leads us to conclude that the sentence imposed on this defendant is, under the totality of the relevant circumstances, manifestly excessive. The ends of

justice will best be served by modifying his term of imprisonment. While we do not condone defendant's conduct, compounding this tragedy by imposing an unduly punitive sentence serves no useful purpose.

While we agree with the sentencing judge that the elements of second degree murder are present in this case, we note that defendant's conduct may legitimately be viewed as an emotionally rooted overreaction to what he perceived as engulfing circumstances. Thus, categorizing his offense for sentencing purposes is no simple matter. It may appropriately be viewed as falling in that hazy borderline between second degree murder and manslaughter. While the victim's provocation of defendant is not enough to justify a reduction of the charge to manslaughter, the facts of this offense present, at the minimum, a colorable case for that lesser degree of criminal culpability.[3] This assessment of the crime for sentencing purposes as being in the nature of manslaughter diminishes the aggravation attributable to the offense and permits reference to that lesser crime in determining the appropriate sanction to be imposed.

An aggravating factor in this case is the insufficiency of the provocation for defendant's act. On the other hand, there are substantial mitigating factors concerning both the personal circumstances of defendant and the other details of his criminal misadventure. The factual circumstances suggest that the killing was the product of a disastrously poor exercise of judgment. Defendant's summoning of the police and full cooperation in their investigation and his plea of *non vult* in the face of a potential sentence of life imprisonment suggest an acknowledgment of grievous wrongdoing conducive to rehabilitation. As noted by the sentencing judge, defendant is an unlikely recidivist who has already been punished by his continuing deep remorse. Defendant's prior non-

---

[3]The maximum period of imprisonment authorized upon a conviction for manslaughter is ten years. *N. J. S. A.* 2A:113–5.

involvement in any criminality and the minimal prospect of any repetition of his wrongdoing overcome concerns for deterrence or societal protection through defendant's isolation.

While always a significant factor, an unblemished personal record of steady employment, good community standing and a stable family environment becomes all the more compelling when it spans almost an entire lifetime. It is in this context that defendant's advanced age, while not any basis for mitigation insofar as his criminal liability is concerned, becomes especially relevant. The sentencing considerations applicable to one who has lived a long and good life differ markedly from those pertaining to persons just embarking on or at the midpoint of life's course. Where a person has attained advanced age without acquiring a criminal record, a sentencing judge may properly treat a single instance of criminality as an aberrant episode permitting a degree of leniency in sentencing. This observation should not, however, be understood as precluding the imposition of a severe prison term when such is warranted by an appraisal of the offense or of the offender notwithstanding the defendant's advanced age. *Cf. State v. Souss, supra; State v. Sherwin, supra.*

Our evaluation of all the relevant factors in this case leads us to conclude that a sentence tantamount to life imprisonment is not warranted. We are mindful that our power to correct an excessive sentence does not contemplate a "* * * *de novo* exercise of the sentencing function by the appellate court" and is to be exercised only where a particular sentence is so clearly excessive as to constitute an abuse of discretion on the part of the sentencing judge. *State v. Knight, supra,* 72 *N. J.* at 194–195; *State v. Dunbar, supra,* 69 *N. J.* at 338–339 (Pashman, J., dissenting); *State v. Bess, supra,* 53 *N. J.* at 18; *State v. Velasquez,* 54 *N. J.* 493, 495 (Jacobs, J., concurring). Our inquiry must convince us that his discretion has been abused, resulting in

a sentence which is manifestly excessive under the totality of the relevant circumstances.

Appellate deference to the discretionary decision of a sentencing judge is similar, in purpose and origin, to that accorded decisions of a trier of fact. It is based primarily on the sentencing judge's presumed superior ability to make a first-hand evaluation of the background and character of the defendant and the offense. In the context of a plea of *non vult* or guilty, primary reliance is necessarily placed on the contents of the presentence report. To this extent, the sentencing decision is based on matters of record equally accessible to appellate consideration. *Cf. Baxter v. Fairmount Food Corp.,* 74 *N. J.* 588 at 600–601 (1977). In such circumstances, our evaluation of the record enables us to determine whether the sentencing judge's discretion has been abused by the imposition of a manifestly excessive sentence, justifying modification of that sentence by an appellate court. *R.* 2:10–3.

We agree with all of the conclusions derived from the presentence report by the sentencing judge concerning the character of the defendant and the nature of the offense. We differ with him only on his ultimate determination that the interests of society required a substantial term of incarceration for this defendant, despite the preponderance of circumstances pointing to a lesser term of incarceration. It appears that the sentence more nearly fits the offense than the offender.

This Court has noted that the goal of deterrence of would-be law breakers is not effectively furthered by imposing severe sentences for crimes with "strong emotional roots." *State v. Ivan, supra,* 33 *N. J.* at 202. Such crimes are often spontaneous reactions to momentary aggravation or pressure. We have also observed that retribution is a disfavored aim of sentencing policy. *Id.* at 199–200. Our review of the sentencing judge's statement of reasons for the sanction imposed indicates that he felt compelled to impose a severe sentence by his concern for the general deterrence of future

crimes. We conclude that a less onerous sentence will adequately fulfill this legitimate sentencing function without bringing the criminal law into disrepute by appearing to depreciate the magnitude of the offense.

In light of the numerous mitigating circumstances, we believe that the interests of society will be adequately vindicated by the substantial term of incarceration we here mandate. The totality of factors in this case leads us to conclude that the sentence imposed was manifestly excessive. It does not, in any way, further the goals of our penal policy.

Accordingly, the judgment of the Appellate Division is modified. Defendant's sentence is reduced to a term of imprisonment for a minimum of 7 years and a maximum of 10 years.

*For modification*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*Opposed*—None.