STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. IRBY
BUTLER, DEFENDANT-APPELLANT.

Argued December 1, 1981—Decided May 12, 1982.

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for appellant (*Stanley C. Van Ness,* Public Defender, attorney).

*Daniel Louis Grossman,* Deputy Attorney General, argued the cause for respondent (*James R. Zazzali,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

HANDLER, J.

This case presents the question whether a defendant can be convicted of first degree robbery under the New Jersey Code of Criminal Justice if he committed the offense by pretending to be carrying a handgun when, in fact, he was unarmed. The Code makes robbery a crime of the second degree, "except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone or purposely inflicts or attempts to inflict serious bodily harm, or is armed with or uses or *threatens the immediate use of a deadly weapon.*" *N.J.S.A.* 2C:15–1(b) (emphasis added). The trial court accepted the de-

fendant's guilty plea to an armed robbery charge and sentenced him as an offender in the first degree. The Appellate Division affirmed, finding that defendant's simulated use of a handgun constituted first degree robbery because he "threatened the immediate use of a deadly weapon," even though he possessed no actual firearm to carry out the threat. We now reverse.

The facts are these. The defendant, Irby Butler, admitted that on December 24, 1979, he approached a woman in the parking lot of the Monmouth Mall, demanded that she turn over her purse, and then took the purse. He further stated that he accomplished this theft by placing his hand in his coat pocket and pretending that he was concealing a handgun. The victim of the crime corroborated this account, relating that, when defendant robbed her, she believed he had a gun.

In 1980 Butler faced trial on this and other charges arising from an unrelated incident. As part of a plea bargaining arrangement, Butler pleaded guilty to three offenses, including the robbery at issue in this case. There is no question that he entered his plea knowingly and voluntarily. In exchange for the plea, the State agreed to drop a number of other charges against the defendant and to recommend a maximum aggregate sentence of not more than 12 years.

On the robbery count, defendant's trial counsel apparently conceded that defendant's conduct constituted a crime of the first degree. Thus, defendant received a 12-year term, to run concurrently with the other sentences imposed on him.[1] Defendant could have received a term of "between 10 years and 20 years" for a conviction of a crime of the first degree, *N.J.S.A.* 2C:43–6(a)(1), while his sentence for a crime of the second degree would have been punishable only by a term of "between

---

[1] The trial court also sentenced Butler to concurrent terms of 2 to 3 years and 10 to 12 years on other unrelated charges. Because all the terms were to run concurrently, Butler was sentenced to serve a maximum of 12 years imprisonment.

5 years and 10 years." *N.J.S.A.* 2C:43–6(a)(2). Defendant's subsequent motion for reduction of sentence was denied.

Defendant then appealed, claiming that his offense constituted only robbery in the second degree. The Appellate Division affirmed defendant's conviction and sentence, holding that simulated use of a handgun during a robbery is a crime of the first degree under the Criminal Code. 178 *N.J.Super.* 205 (1981). The court reasoned that our State's robbery statutes have long emphasized the subjective perception of the victim, that the plain language of the present statute continues to do so, and that changes in the specific wording of the robbery statute were not intended to affect that basic emphasis. The Appellate Division also found no merit in defendant's argument that his sentence was excessive. We granted defendant's petition for certification. 87 *N.J.* 395 (1981).

On this appeal defendant contends that his 12-year maximum sentence should be modified to a term of no greater than 10 years because he did not actually possess a firearm during the commission of this offense and was therefore guilty only of robbery in the second degree. Defendant concedes that he is guilty of robbery but questions the degree of his offense.

At the outset we note that despite defendant's guilty plea to the crime of armed robbery, he has retained the right on appeal to raise as reversible error the absence of "a factual basis for the plea." *R.* 3:9–2. See *State v. Taylor,* 80 *N.J.* 353, 362 (1979); *State v. Nichols,* 71 *N.J.* 358, 361 (1976). We reject the State's contention that by pleading guilty, defendant has waived the right to challenge the factual basis for his plea and his first degree robbery conviction based thereon. The State argues that defendant could well have received a more severe sentence and consecutive terms had he not entered into a plea arrangement and that therefore he should not now be allowed to circumvent that agreement. This argument is without merit because the plea bargain in this case did not obviate the need to establish a sufficient factual basis for the plea. *Taylor,* 80 *N.J.* at 362. It

called upon the prosecutor to recommend only a maximum sentence of 12 years for the offense. There was no assurance that the trial court would, in fact, impose that sentence rather than a lesser one. Hence, even though the sentence imposed falls within the terms of the plea bargain, it does not act as a bar to defendant's right to challenge his conviction as a first degree offender, as well as the excessiveness of the sentence. See, *e.g., State v. Deutsch*, 34 *N.J.* 190 (1961).

Defendant argues that he cannot be guilty of robbery in the first degree because he possessed no firearm when he committed the offense but merely simulated the use of a handgun. According to the defendant, the Code's language defining robbery as a first degree offense when the assailant "threatens the immediate use of a deadly weapon" establishes an objective standard that focuses on the actual danger to the victim from the presence of a deadly weapon. See *State v. Magwood*, 177 *N.J.Super.* 105, 106 (1981) (dictum); *State v. Rines*, 173 *N.J.Super.* 140, 141–142 (Law Div.1980) (new statutory scheme "deals with the objective device rather than the subjective reaction of the victim").

There can be no doubt that under the predecessor statute to *N.J.S.A.* 2C:15–1(b), Butler's crime would have resulted in an aggravated sentence. *N.J.S.A.* 2A:151–5 (repealed Sept. 1, 1979) provided for an additional term for one who committed a robbery with any firearm or object, "whether or not capable of being discharged" and "whether toy or imitation, having an appearance similar to or capable of being mistaken for [a dangerous weapon]." See also *N.J.S.A.* 2A:141–1. Courts interpreting the prior law consistently held that simulation of a weapon converted robbery into an aggravated offense.[2] See,

---

[2]Other states have divided on the question whether simulation of a weapon elevates robbery to a first degree crime. See generally *Annot.*, "Robbery by Means of Toy or Simulated Gun or Pistol," 81 *A.L.R.*3d 1006 (1977). Some states have followed a subjective approach, finding that even the simulated use of a weapon constitutes an aggravated offense. See, *e.g., State v. Lorio*,

*e.g., State v. Cooper*, 165 *N.J.Super.* 57, 67–68 (App.Div.1979), certif. den., 81 *N.J.* 56 (1979) (hand in pocket); *State v. Brewer*, 142 *N.J.Super.* 70, 75–76 (App.Div.1975), aff'd o. b., 70 *N.J.* 329 (1976) (hand in pocket).

However, significant changes in the language and grading of the Code have marked a clean break with the past. The Code now makes robbery a crime of the second degree, except when there are present certain aggravating circumstances that elevate the offense to a crime of the first degree. One such circumstance involves the actor using or "threaten[ing] the immediate use of a deadly weapon." *N.J.S.A.* 2C:15–1(b). This case requires us to interpret the meaning of that latter phrase.

■ As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent. See *Renz v. Penn Central Corp.*, 87 *N.J.* 437, 440 (1981); *Watt v. Mayor and Council of Borough of Franklin*, 21 *N.J.* 274, 276–277 (1956).

In the instant case, although the pertinent statutory language of "threatening the immediate use of a deadly weapon" appears reasonably clear on its face, arguably that language is susceptible to two interpretations. The most reasonable reading of the language is that the actor must actually possess or be in control of a deadly weapon when he threatens its immediate use. A

---

546 *P.2d* 1254 (Colo.1976); *State v. Smallwood*, 346 *A.2d* 164 (Del.1975); *People v. Washington*, 4 *Mich.App.* 453, 145 *N.W.2d* 292 (1966); *Commonwealth v. Johnson*, 212 *Pa.Super.* 1, 239 *A.2d* 861 (1968). Other states have held that the simulated use of a handgun is not use of a "dangerous weapon" for purposes of elevating a robbery to the level of a crime of the first degree. See, *e.g., People v. Aranda*, 63 *Cal.2d* 518, 407 *P.2d* 265, 47 *Cal.Rptr.* 353 (1965); *People v. Ratliff*, 22 *Ill.App.3d* 106, 317 *N.E.2d* 63 (1974); *People v. Lockwood*, 52 *N.Y.2d* 790, 417 *N.E.2d* 1244, 436 *N.Y.S.2d* 703 (1981). Usually, the outcome of these cases has depended upon the specific language of the state's robbery statute; therefore, the precedent of other jurisdictions is of limited value in interpreting our statute.

second possible construction, not easily extracted from the statute's language, is that the actor must simply give the appearance of carrying a deadly weapon when he makes his threats. Therefore, while we have no doubt about the statute's true meaning, we will look beyond its plain language to verify the Legislature's intent.

The commentary to the Code sheds some light on this question. It notes that the basic crime of robbery "encompasses use of a toy pistol or unloaded gun, since a device can be employed to threaten serious injury and may be effective to create fear of such injury." 1 *N.J. Criminal Law Revisions Commission Final Report* at 214 (1971). The commentary then goes on to explain that "if ... a weapon be used to menace or recklessly injure, the offense will be a crime of the second degree; and if it be used to attempt to kill or seriously injure, the offense will be a crime of the first degree." *Id.* The commentary adds that actually "being armed with a deadly weapon and use or threatened use of a dangerous instrument" elevates the robbery to a first degree offense.

What emerges from this commentary is the clear intent of the drafters of the Code to distinguish between the situation where an assailant simulates the use of a weapon, as opposed to when he actually possesses a dangerous firearm during the commission of the offense. As the commentary explains, mere "menacing," which is all one is capable of doing with a toy pistol or simulated weapon, should be considered a second degree offense only, while the actual use of a dangerous weapon to make such threats constitutes a crime of the first degree.

This interpretation is reinforced by the fact that our robbery provision is based substantially on the applicable sections in the Model Penal Code and the New York Penal Code, both of which make robbery with a simulated weapon a crime of only the second degree. *Final Report* at 70. See *Model Penal Code* § 222.1 (Official Draft 1962); *N.Y. Penal Law* §§ 160.10 and 160.15 (Consol.1965). Like our statute, the Model Penal Code

provides specific grading for the offense of robbery. It makes robbery a crime of the first degree only if the robber actually "attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury." *Model Penal Code* § 222.1. Thus, the writers of the Model Penal Code rejected a subjective test for determining when a robbery is elevated to a crime of the first degree. Under the Model Code, the actor must have been in possession of a dangerous weapon at the time of the robbery to be guilty of a first degree offense.

While the language of the New Jersey statute varies slightly from the Model Code's, the provision nevertheless adheres to the Code's basic approach that the degree of the crime depends upon the objective prospect of harm rather than the subjective perception of the victim. In our view the New Jersey statute could not be more clear—the actor must actually possess a dangerous weapon during the commission of the offense to be guilty of a crime of the first degree.

The applicable provisions in the New York Penal Code, upon which our statute is also based, further support this interpretation. Under the New York Penal Code, a defendant can raise as an affirmative defense to a first degree robbery charge the fact that the weapon used to commit the crime "was not a loaded weapon from which a shot, readily capable of producing death or other serious injury, could be discharged." *N.Y. Penal Law* § 160.15. *Cf. Conn.Gen.Stat.Ann.* § 53a–16a (West Conn.Supp. 1981) (making it an affirmative defense that firearm used to commit crime was "not a weapon from which a shot could be discharged"). While our Code contains no such explicit affirmative defense, its reliance on the New York example indicates that *N.J.S.A.* 2C:15–1(b) also rests on an objective standard.

The relevant Code sections read in their entirety further clarify the meaning of this language. *N.J.S.A.* 2C:15–1(b) makes robbery a crime of the first degree when the assailant is "armed with or uses or threatens the immediate use of a deadly weapon." The implication of this phrasing is that the defendant

must actually possess a deadly weapon when committing the offense for his act to be a crime of the first degree. Furthermore, all the other subparts in the section defining first degree robbery focus on the actual danger to the victim, rather than his subjective apprehension of harm. For example, robbery is a crime of the first degree when the assailant "attempts to kill anyone" or "purposely inflicts or attempts to inflict serious bodily injury" or "is armed with or uses . . . a deadly weapon."

To read the word "threaten" in isolation distorts its otherwise clear meaning when read in context with the rest of the section. See *Loboda v. Clark Tp.*, 40 *N.J.* 424, 435 (1963). Moreover, the Code explicitly defines "deadly weapon" as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury." *N.J.S.A.* 2C:11–1(c). This is an objective definition that does not include toy guns or simulation. Since first degree robbery requires a *threat* with a *deadly weapon*, there can be no doubt that the weapon itself must exist and be of a type that would ordinarily be capable of causing a grievous or fatal injury.[3]

This interpretation is supported by the fact that elsewhere in the Criminal Code, when the Legislature intended a subjective

---

[3]Earlier this year, a bill was signed into law amending the definition of "deadly weapon" under *N.J.S.A.* 2C:11–1(c) to read as follows:

"Deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used, is known to be capable of producing death or serious bodily injury *or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.* (emphasis added). [*L.* 1981, *c.* 384, eff. Jan. 4, 1982]

This change in the law only reinforces the fact that under the previous formulation a toy gun or simulation was not considered a deadly weapon. We think it obvious that the Legislature's initiative in this regard indicated its desire to broaden the definition previously existing for the term, "deadly weapon."

test to apply, it provided explicit language to that effect. For example, a defendant can be convicted of aggravated sexual assault if he is "armed with a weapon or any object fashioned in such a manner as to lead the victim to reasonably believe it to be a weapon and threatens by word or gesture to use the weapon or object." *N.J.S.A.* 2C:14–2(a)(4). And second degree burglary is committed when the actor "is armed with or displays what appears to be explosives or a deadly weapon." *N.J.S.A.* 2C:18–2(b)(2). Furthermore, the predecessor to *N.J.S.A.* 2C:15–1 explicitly established a subjective test by defining "deadly weapon" as "any object or device, whether toy or imitation, having an appearance similar to or capable of being mistaken for [a dangerous instrument]." *N.J.S.A.* 2A:151–5 (repealed September 1, 1979). Thus, the Legislature has consistently used explicit language to establish a subjective test. Because such language is absent from the Code section now in question, it should be interpreted as requiring the objective presence of a deadly weapon. See *Key Agency v. Continental Casualty Co.*, 31 *N.J.* 98, 103 (1959).

The Appellate Division based its decision in part on the fact that the new Criminal Code has a special "Rules of Construction" section which states: "The provisions of the code not inconsistent with those of prior laws shall be construed as a continuation of such laws." *N.J.S.A.* 2C:1–1(e). The appellate court read this provision to mean that the Legislature manifested its desire to insure continuity with past criminal laws whenever possible. The flaw in this reasoning is that the Code provision at issue here is inconsistent with and substantially different from the previous statute. The Code's robbery section establishes specific grading for the offense. Moreover, the express language of *N.J.S.A.* 2C:15–1(b), prior to recent amendments, provided a completely new formulation for the crime of robbery with a deadly weapon. Thus, this part of the Code was clearly intended to be a fresh approach.

■ The Legislature's decision to change its previous course and adopt an objective standard is understandable. The new statutory scheme imposes a grading system for the offense. It recognizes that a robbery committed with an actual deadly weapon is more serious than one committed without such a weapon. The defendant is punished more severely for the real danger which his conduct created. The Legislature reasonably chose to impose a harsher penalty for conduct which creates a real danger to the public because of the actual presence of a dangerous weapon capable of causing grievous or fatal injury.[4]

We hasten to add that our holding today does not allow the defendant to escape punishment for his crime. Butler is still guilty of second degree robbery, a serious offense which carries a sentence of from 5 to 10 years. *N.J.S.A.* 2C:43–6(a)(2). He will be punished for that offense. However, he cannot be punished for the aggravated offense of robbery in the first degree because he did not actually possess a deadly weapon when he made his threats in this instance. Therefore, we conclude that the defendant's offense must be reduced from first degree to second degree robbery.

■ As to the correct term of imprisonment, we see no need to remand the case to the trial court for resentencing. See *R.* 2:10–3. Acting under the mistaken impression that Butler had committed a crime of the first degree, the sentencing judge deemed Butler's offense sufficiently grave to impose more than the mandatory minimum sentence for first degree robbery of 10 years. Thus, Butler would undoubtedly receive the maximum sentence for a second degree offense of 10 years were we to remand the case. Under these circumstances, we choose simply

---

[4]Of course, the Legislature has the power, now exercised through the recent amendment to *N.J.S.A.* 2C:11–1(c), *L.* 1981, *c.* 384, quoted *ante* at 12 n.3, to provide the same sanction for a robbery committed by simulating the use of a weapon as for one perpetrated with an actual firearm.

to impose a 10-year term, to be served concurrently with the other sentences already imposed.

Because the effect of our decision is to reduce defendant's sentence on the robbery count from 12 years to 10 years, defendant's claim that the sentence he received was manifestly excessive is considerably diminished. We simply note that an appellate court should reverse a sentence as manifestly unfair only if it was so excessive as to constitute an abuse of discretion. See *State v. Whitaker*, 79 *N.J.* 503, 512–517; *State v. Leggeadrini*, 75 *N.J.* 150, 156–161 (1977). In this case the crime involved was quite serious. This fact, coupled with the related plea bargaining arrangement, would have justified a severe sentence. Therefore, we view a 10-year sentence on the second degree robbery conviction as a reasonable prison term for that offense.

Accordingly, we reverse the judgment of the Appellate Division, vacate the judgment of conviction for first degree robbery and remand for entry of a judgment of conviction for robbery in the second degree and the imposition of a 10-year sentence for that offense.

PASHMAN and O'HERN, JJ., dissenting.

We dissent substantially for the reasons set forth in the Appellate Division opinion.

As the majority notes, the Legislature has clarified the definition of a "deadly weapon" in *N.J.S.A.* 2C:11–1(c) expressly to include a simulated weapon. *L.* 1981, *c.* 384, eff. Jan. 4, 1982. Under the current language, there is no doubt that defendant could be convicted of first degree robbery. The majority concludes that this change represents a broadening of the statutory definition. On the contrary, we believe that the Legislature never intended to restrict first degree robbery to crimes committed with a real gun. The current provision is entirely consistent with the pre-Code definition of a deadly weapon in *N.J.S.A.*

2A:151–5 (repealed Sept. 1, 1979). The two-and-a-half year interval is sufficiently short to permit the conclusion that the Legislature never intended *N.J.S.A.* 2C:15–1 and *N.J.S.A.* 2C:11–1(c) to change the statutory criteria for first degree robbery. Rather, the quick amendment of *N.J.S.A.* 2C:11–1(c) demonstrates that no "clean break" with the past ever occurred. *Ante* at 226.

The majority's reliance on the Model Penal Code and the New York Penal Code is equally unavailing. The New Jersey provision defining grades of robbery, *N.J.S.A.* 2C:15–1(b), contains aggravating circumstances not included in the Model Penal Code § 222.1(2) (Official Draft 1962). While the Model Penal Code defines first degree robbery only in terms of attempts to kill or injure, the New Jersey drafters also made it a first degree crime to *threaten* the immediate use of a deadly weapon. *N.J.S.A.* 2C:15–1(b). Similarly, the New York Penal Code § 160.15 specifically excludes from first degree robbery crimes committed with a weapon which could not in fact kill or seriously injure. This exclusion is not present in New Jersey law. The affirmative defense in the New York law that the gun was simulated was not adopted in the New Jersey provision.

Finally, it is simply not true that a robbery committed with a simulated weapon is necessarily less serious than one committed with an actual gun. The victim experiences as much fear whether or not a deadly weapon is used, and either way the robbery is as likely to provoke a violent response.

We would affirm the judgment of the Appellate Division.

*For reversal and remandment* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER and POLLOCK —5.

*For affirmance* —Justices PASHMAN and O'HERN—2.