**Samuel George BIBBY, Appellant,**

v.

**Elijah TARD, Jr., and Irwin Kimmelman, Attorney General of the State of New Jersey, Appellee.**

**No. 83–5022.**

United States Court of Appeals,
Third Circuit.

Argued May 21, 1984.

Decided Aug. 3, 1984.

As Amended Aug. 15, 1984.

Anthony J. DeLellis (argued), Trenton, N.J., for appellant.

Irwin I. Kimmelman, Atty. Gen. of the State of N.J., Anne Paskow (argued), Frank M. Gennaro, Deputy Attys. Gen., Div. of Crim. Justice, Appellate Section, Trenton, N.J., for appellee.

## OPINION OF THE COURT

Before GARTH and SLOVITER, Circuit Judges and NEAHER, District Judge.*

* Honorable Edward R. Neaher, United States District Judge for the Eastern District of New York, sitting by designation.

GARTH, Circuit Judge.

Samuel George Bibby, the petitioner, appeals from the district court's denial of his petition for a writ of habeas corpus. We find merit in his petition, and we will therefore reverse and remand to the district court with directions to hold an evidentiary hearing.

## I.

Bibby was indicted, along with Gerald Douglas Jefferson, on December 28, 1979 by a Monmouth County, New Jersey grand jury, charged with burglary, possession of a handgun with the purpose of using it unlawfully against another, pointing a firearm at another, robbery, kidnapping, extortion, and possession of a handgun without a permit. The two men had allegedly committed the crimes in the course of a robbery of the Monmouth Oil Burner Company, during which Bibby held a gun to the head of the company's bookkeeper.

Bibby was tried on April 22–24, 1980, before a jury and convicted of possession of a handgun with the purpose of using it, pointing a handgun, robbery, and unpermitted possession of a handgun; he was acquitted of extortion and the trial court dismissed those counts charging burglary and kidnapping.

On May 27, 1980, the court held a sentencing hearing. The court determined that as to the robbery charge, Bibby should be sentenced for first degree robbery under N.J.Stat.Ann. 2C:15–1(b). Observing that Bibby "has an adult record, has a juvenile record," and was convicted of "most serious crimes, to take a gun, hold it at the side of the neck of a woman while his co-defendant is going through the safe of the place that she works and then pushing and then knocking her to the ground to assist his escape," the court sentenced Bibby to eighteen years in prison with nine years of parole ineligibility. In addition, the court sentenced him to a term of four years, with two years of parole ineligibility, for unlawful possession of a handgun. The written statement of reasons that accompanies the "Judgment of Conviction and Order for Commitment," reads in full:

This defendant has a juvenile and criminal record. He held a *loaded magnum* at the neck of his female victim during a robbery while his co-defendant cleaned out her employer's safe. Aggravating circumstances greatly outweigh those in mitigation.

*This defendant has a long criminal record including prior armed robberies.* He must be punished and the community protected from his continued defiance of the law. (Emphasis added).

Bibby appealed his conviction to the New Jersey Superior Court (Appellate Division), which affirmed the conviction on December 23, 1981. On June 16, 1982 the Supreme Court of New Jersey denied his petition for certification.

Thereupon, on July 7, 1982, Bibby filed a petition for a writ of habeas corpus in federal district court. The petition alleged two grounds for the issuance of the writ: first, that his conviction for first degree robbery was illegal because he was indicted only for second degree robbery; second, that his sentence was illegal because the sentencing judge relied on materially false information in sentencing him. The district court denied Bibby's petition on September 24, 1982. This court issued a certificate of probable cause for appeal on January 13, 1983.

Bibby's attorney has raised two issues in his brief to us. Point I of the brief states, "the trial court erred by finding that the acts of the defendant constituted an act of the *first degree*, rather than an act of the second degree which resulted in the imposition of an illegal sentence." Point II states, "The trial court increases [sic] an indictment from a second degree offense to a first degree offense thereby usurping the jury's function and depriving defendant of his constitutional rights." In a supplemental memorandum, however, counsel characterized both issues as being part and parcel of the same question—that is, whether the trial court improperly permitted Bibby to be convicted of first degree robbery rather than second degree robbery, the subject of

the grand jury's indictment as Bibby's counsel reads it.

Bibby also filed a pro se brief, in which he raised the issue also raised by his counsel, that he was convicted of first degree robbery after being indicted for second degree robbery. He also contends that he was sentenced improperly, primarily because the sentencing judge stated as his reason for Bibby's eighteen-year sentence the fact that Bibby had committed a number of armed robberies before the one for which he was being sentenced. Bibby contends that he had never before been convicted of any armed robberies. As we read his pro se brief, it raises the question whether the sentencing judge erroneously assumed that Bibby had a record of armed robberies and as a result improperly sentenced Bibby on the basis of a material mistake of fact.

## II.

We may first dispose of the contention, raised by Bibby and his counsel, that his conviction for first degree armed robbery constituted an illegal modification of the indictment, in that the indictment did not give him fair notice of the charge of first degree robbery for which he was tried and convicted.[1]

Bibby was indicted for committing "an act of robbery upon Suzanne Wood and the Monmouth Oil Burner Company by purposely putting the said Suzanne Wood in fear of immediate bodily injury during the course of committing a theft contrary to the provisions of N.J.S. 2C:15–1 ...." He was also indicted for possession of a handgun for the unlawful purpose of using it during the robbery, with pointing a handgun at the victim, and with possessing a handgun without a permit, all at the time and place of the robbery.

■ In determining whether the notice in an indictment is sufficient to afford a defendant due process, the question is whether under the circumstances there was reasonable notice and information of the specific charge against him and a fair hearing in open court. *Paterno v. Lyons*, 334 U.S. 314, 320, 68 S.Ct. 1044, 1047, 92 L.Ed. 1409 (1948). The indictment must be read as a whole. *Wojtycha v. Hopkins*, 517 F.2d 420 (3d Cir.1975).

■ Applying these principles, Bibby received adequate notice of the charge. The "degree" of robbery is not part of the substantive offense but rather is merely a grading provision, N.J.Stat.Ann. 2C:15–1(b). Moreover, it is clear from the indictment that Bibby was being charged with using a gun in the course of the robbery, since the indictment charged other weapons offenses. *Cf. Conner v. Auger*, 595 F.2d 407, 410 (8th Cir.1979) (indictment for "murder," together with grand jury minutes attached, adequate for due process purposes when the first degree murder charge was submitted to the jury).

---

**1.** Bibby's counsel's brief supports this argument in part by contending that Bibby could not be convicted of first degree robbery because there was no proof that the gun he used was loaded. To bolster his argument, *State v. Butler*, 89 N.J. 220, 445 A.2d 399 (1982) is cited. *Butler* held that use of a toy or simulated gun was not use of a deadly weapon for purposes of the New Jersey first degree armed robbery statute. However, no independent *Butler* issue is raised here, just as it was not raised in the state courts or in the district court. Thus, to that extent, any *Butler* issue is unexhausted.

Even if such a contention were to be construed as a separate federal claim—that proof of use of an unloaded weapon is insufficient evidence, for due process purposes, to support a jury verdict of guilty, *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), so that the entire petition would have to be dismissed for failure to exhaust, *see Rose v.* *Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), this contention—as the record reveals—was never presented as a separate claim before the district court. Indeed, as noted in text, Bibby's counsel in a supplemental memorandum to this court denies that it is being raised as a separate claim before us.

We therefore conclude that the instant petition for habeas corpus does not raise a federal *Butler* claim, i.e., that Bibby could not constitutionally be convicted of first degree armed robbery if *Butler* supports the proposition that an unloaded gun is not a deadly weapon for purposes of the New Jersey armed robbery statute. We express no view with respect to the merits of this argument, leaving the construction of the New Jersey statute and its ramifications to the New Jersey courts in the first instance if indeed Bibby ever presses such a contention in future proceedings.

Thus, the district court ruled properly that Bibby was not convicted of a charge for which he was not indicted, and that accordingly Bibby's conviction should be upheld.

### III.

The claim that we find to be more troublesome is raised in Bibby's pro se brief. The major contention raised by Bibby in this respect is that the sentencing judge's written statement of reasons reveals that he erroneously assumed that Bibby had a record of armed robberies, even though the judge's remarks at the sentencing hearing reveal no such assumption.[2]

█ The court's comments at the sentencing hearing as to Bibby's record [3] were completely consistent with the information presented to the court at the hearing and the information found in the pre-sentence report. His written statement of reasons, however, is inconsistent with that information, in that while the pre-sentence report listed a number of juvenile and adult offenses, none of the offenses that were listed was an armed robbery. Bibby's contention that he had no record of armed robberies thus seems to be borne out by the record before us. The district court, however, did not hold an evidentiary hearing on the question. An evidentiary hearing is required if there is a dispute of material fact—that is, facts which, if true, would entitle the petitioner to relief—and the petitioner was not afforded a full and fair evidentiary hearing in the state courts. See Procunier v. Atchley, 400 U.S. 446, 451, 91 S.Ct. 485, 488, 27 L.Ed.2d 524 (1971); Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); Patterson v. Cuyler, 729 F.2d 925 (3d Cir. 1984).

Thus, the threshold question is whether the existence vel non of a record of prior

armed robberies is material. The sentencing judge's written statement of reasons is required by N.J.R.Crim.Prac. 3:21–4(e). This statement is made part of the judgment of conviction, R. 3:21–5, see State v. L.R., 167 N.J.Super. 364, 400 A.2d 877 (Law Div.1979), and forwarded to the institution where the person is in custody, N.J. Stat.Ann. 2A:164–18. The result is to "provide a mechanism whereby the reasons for all sentences ... are readily accessible as a record document in the action." S. Pressler, Current N.J. Court Rules, Comment R. 3:21–2 (1984). The policy considerations underlying the requirement that the sentencing judge furnish reasons for the sentence are to provide an appellate court with the means by which to review a decision on sentencing, and to contribute to uniformity of sentencing. State v. Tumminello, 70 N.J. 187, 358 A.2d 769 (1976).

█ Clearly, the statement of reasons that becomes a part of the judgment of conviction is a document of major importance: it is the document that courts, custodial institutions, and the public rely upon to evaluate the basis for the sentence imposed upon the convicted defendant. Accordingly, even though the record of the sentencing hearing suggests that the sentencing court relied on correct information (as measured by Bibby's allegations and the contents of Bibby's pre-sentence report), it is clear that the official statement of reasons enjoys sufficient importance in the New Jersey sentencing scheme that it is to be regarded as definitive evidence of the sentencing judge's reasoning.

█ Due process is violated if a sentencing court imposes a sentence based on extensive and materially false information. Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); see also United States v. Jackson, 649 F.2d 967, 981 (3d

---

**2.** This issue was not presented in the brief submitted by Bibby's counsel. Indeed, Bibby's counsel apparently did not question the propriety of the sentencing judge's actions. When asked about the difference in content between the oral statement made at the sentencing hearing as to Bibby's record of prior convictions and the statement of reasons appended to the judgment of conviction. Bibby's attorney was confi-

dent that the court's explanation at the sentencing hearing was the one to be given effect. Thus Bibby's counsel did not question whether the sentencing court had relied on misinformation in sentencing Bibby.

**3.** See supra pp. 28–29.

Cir.1981). Reliance on false assumptions about prior convictions may be of constitutional magnitude if the assumptions are materially untrue. *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (invalid convictions).

As in *Tucker*, in the instant case "the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him." 404 U.S. at 447, 92 S.Ct. at 592. The court's apparent belief that Bibby had a record of prior similar crimes (armed robberies) was a basis for his imposing a sentence, as Bibby, the court said, "must be punished and the community protected from his continued defiance of the law." In this case, then, as in *Tucker*, if we take as true the petitioner's allegation that he had no record of prior armed robberies, the sentence was "founded at least in part upon misinformation of constitutional magnitude." 404 U.S. at 447, 92 S.Ct. at 592.

■ Thus on its face the question of whether Bibby had a record of prior armed robberies appears to us to be material. As noted, *supra*, the district court must hold an evidentiary hearing where there is a material dispute of fact, unless the state court provided the petitioner a full and fair evidentiary hearing on the issue. Although Bibby was provided with a hearing when he was sentenced, that hearing cannot by any means be described as a "full and fair" hearing when the state judge who sentenced Bibby gave no indication at the time of sentencing and during his oral colloquy with Bibby that he knew of or considered that Bibby had a record of prior armed robberies. To the contrary, the information in the pre-sentence report, and the record taken at time of sentencing, do not reveal any such history. It is the sentencing court's written statement of reasons itself that created a factual dispute by reciting and apparently relying upon Bibby's record of prior armed robberies.

In addition to the sentencing court's alleged error with respect to Bibby's record, Bibby points to the sentencing judge's reference, in the written "statement of reasons," to Bibby's holding a "loaded magnum" at the victim's neck during the robbery. (See pp. 28–29, *supra*.) Contending that there was no evidence that the gun he used was loaded, Bibby argues that this too is material misinformation upon which the sentencing judge relied.

The state does not dispute Bibby's contention that the evidence at trial showed the gun to be unloaded. Thus, the question is whether the misinformation that the gun was loaded was material information on which the judge relied in sentencing Bibby.

As to this item of misinformation, unlike the alleged misstatement of Bibby's record, we cannot say that by itself it was material under the principle of *Townsend v. Burke, supra*. The court's statement refers to the "aggravating circumstances" of Bibby's holding the gun at the neck of his female victim while his codefendant cleaned out the safe. We believe that the court's statement can reasonably be interpreted to be an expression of the court's concern that the victim was placed in fear. This is clear from the court's stress on the facts that the gun was held "at the neck" of the victim and that she was "female," in addition to the fact that this was done while the other defendant rifled the safe. These facts add up to a situation creating fear in the mind of the victim. Moreover, we do not believe that the victim's fear would have been materially lessened had she perceived that Bibby's gun was not loaded. Thus whether the gun was loaded or not would not be material to this concern. We are confident therefore that reliance by the sentencing judge on just this misinformation without more, is not sufficiently "extensive" or material (*see Townsend, supra*) to rise to a violation of due process. Thus, at the most, the erroneous assumption that the gun was loaded could be material for *Townsend* purposes only if considered with misinformation (if proved) as to Bibby's previous convictions for armed robberies.

Consequently, we will return this proceeding to the district court so that an evidentiary hearing may be conducted as to whether Bibby had ever been convicted of earlier armed robberies. If he had not been so convicted (as the pre-sentence re-

port suggests), then the district court should issue the writ conditioned upon Bibby's being resentenced by the state court within a reasonable time.

### IV.

We will reverse the district court's order dated September 24, 1982, dismissing the petition, and remand to the district court with directions to conduct an evidentiary hearing on the issue of whether Bibby had previously been convicted of armed robberies. If the district court finds that Bibby has not been previously convicted of armed robberies, the district court should issue the writ unless Bibby is resentenced by the New Jersey courts within a reasonable time, such time to be determined and provided by the district court.