Troy TOULSON, Petitioner,

v.

Howard L. BEYER, Superintendent New Jersey State Prison and Robert J. Del Tufo, Attorney General of New Jersey, Respondents.

Civ. A. No. 90–4326 (WGB).

United States District Court,
D. New Jersey.

May 13, 1992.

Troy Toulson, pro se.

Office of Atty. Gen. of N.J. by Linda A. Rinaldi, Deputy Atty. Gen., Div. of Crim. Justice, Appellate Section, Trenton, N.J., for respondents.

## OPINION

BASSLER, District Judge:

Petitioner, Troy Toulson, an inmate at Trenton State Prison, Trenton, New Jersey, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. In support of his petition,

he challenges both the fact and duration of his incarceration on the following grounds: (1) the admission of evidence at trial of statements petitioner made without the assistance of counsel violated petitioner's federal constitutional right to counsel under the Sixth and Fourteenth Amendments; (2) the admission into evidence at trial of certain statements made by petitioner violated petitioner's Fifth Amendment right against self-incrimination as articulated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (3) the trial judge's failure to give a limiting instruction regarding petitioner's statements was in plain error which prejudiced the trial's outcome; (4) petitioner's sentence totaling forty-five years in New Jersey state prison with a twenty-year parole disqualifier was "manifestly excessive"; (5) the judge based petitioner's sentence on facts that are neither in the trial record nor in the presentence report.

For the reasons discussed below, petitioner's request for habeas corpus relief will be granted with respect to his sentencing; his request for relief with respect to his conviction is denied.

## I. *Facts and Procedural History*

On December 30, 1980, petitioner was charged on five counts involving an attempted armed robbery on October 12, 1980. The counts included: (1) conspiracy to commit armed robbery, in violation of N.J.Stat.Ann. 2C:5–2; (2) possession of a handgun without a permit, in violation of N.J.Stat.Ann. 2C:39–5(b); (3) possession of a handgun with a purpose to use it unlawfully, contrary to N.J.Stat.Ann. 2C:39–4; (4) committing aggravated assault by knowingly causing serious bodily injury to victim, Christine Vay, in violation of N.J.Stat.Ann. 2C:12–1(b)(1); and (5) attempt to commit armed robbery with a deadly weapon, in violation of N.J.Stat. Ann. 2C:15–1. Da–1–6.

Petitioner was convicted of all five counts and the trial judge committed him to the custody of the Commissioner of the Department of Corrections for consecutive terms of ten years, with a minimum parole ineligibility of five years on the first count; five years on the second count; ten years, with five years of parole ineligibility on the fourth count; and twenty years, with ten years of parole ineligibility on the fifth count. The third count conviction was deemed to merge into the fifth count conviction. Thus, petitioner's total sentence amounted to forty-five years, with twenty years of parole ineligibility. *See* Unpublished Opinion of Superior Court of New Jersey Appellate Division, at Da–23–24.

Petitioner appealed both the fact of his conviction and the duration of his sentence to the Appellate Division; on October 4, 1982, the trial court's decisions were affirmed without opinion by the Appellate Division, as permitted by *N.J. Rule* 2:11–3(e)(2). *Id.* at Da–25.

Petitioner challenged the Appellate Division's affirmance by petitioning for certification to the New Jersey Supreme Court, Da–27, however, in an order dated December 6, 1982, and filed December 8, 1982, the state supreme court denied certification.

Petitioner then moved in the Appellate Division for reconsideration of his sentence on March 3, 1983, Da–45–47. This motion also was denied. Da–48 (Date of order illegible).

Petitioner petitioned the Superior Court of New Jersey Law Division for post-conviction relief ("PCR") on the grounds that his sentencing exceeded the state statutory guidelines pursuant to N.J.Stat.Ann. 2C:44, and that the "sentencing judge based his sentence upon 'information' without giving notice to the defendant that such 'information' would be used and without giving the defendant the opportunity to answer the same." Petition for Post–Conviction Relief at Da–49. Petitioner's petition was denied on January 30, 1987. Habeas Corpus Petition ¶ 11(a)(5) & (6).

## DISCUSSION

### II. *Exhaustion Requirement*

A state prisoner must exhaust state remedies before a federal court will entertain an application for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c). The United

States Supreme Court explained that "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982) (citation omitted). As such, the exhaustion doctrine is applied to promote comity—and minimize friction—between the state and federal judicial systems " 'by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.' " *Id.* (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981)). *See also, Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986).

Once the Court in *Rose* reviewed the statutory law, case law, and policy reasons for the exhaustion doctrine, it resolved the question whether the doctrine should apply to habeas corpus petitions with both exhausted and unexhausted grounds (i.e., a "mixed petition") by concluding that "[a] rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." *Rose*, 455 U.S. at 518–19, 102 S.Ct. at 1203–04. The Court held that the exhaustion requirement should be strictly enforced. *Id.* at 520, 102 S.Ct. at 1204. It further explained that this interpretation of §§ 2254(b) and (c) would inure to the benefit of both the courts and potential litigants, pro se and represented, by reducing piecemeal litigation and by providing a simple and clear instruction: "before you bring any claims to federal court, be sure that you first have taken each one to state court," *id.* at 520, 102 S.Ct. at 1204, and therefore, strict enforcement requires that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims." *Id.* at 522, 102 S.Ct. at 1205.

In order to follow the Supreme Court's simple and clear instruction, and so satisfy the exhaustion requirement, the petitioner's federal claim must be "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The Court explained that "[i]t is not sufficient merely that the federal habeas applicant has been through the state courts." *Id.* at 275–76, 92 S.Ct. at 512–13. A state prisoner is required to "present the state courts with the same claim he urges upon the federal courts." *Id.* at 276, 92 S.Ct. at 512. Moreover, "[b]oth the legal theory and the facts on which a federal claim rests must have been presented to the state courts." *Gibson*, 805 F.2d at 138. The petitioner must have presented his federal claim "to the highest court of the state, either on direct review of the conviction or in a postconviction attack." 17A Charles A. Wright, et al., *Federal Practice and Procedure* § 4264.1 (2d ed. 1988).

■ Within this precedential framework, a careful examination of the record reveals that although petitioner is correct in his assertion that the habeas petition is based entirely upon briefs submitted to state courts, petitioner's Letter–Brief In Lieu of Writ of Traverse, dated May 24, 1991 at 3, he has nonetheless failed to satisfy the requirements of exhaustion in that several of the grounds raised in support of his claim for habeas relief were raised only before the state court's appellate division, but were not "fairly presented" to the New Jersey Supreme Court. Specifically, Grounds One, Two, and Three are undeniably absent from his petition for certification to the New Jersey Supreme Court. *See* Da–27–44. While petitioner relies on *Picard v. Connor* to support the proposition that "the federal claim must be fairly presented to the state courts," 404 U.S. at 275, 92 S.Ct. at 512, which petitioner asserts he has done, *Picard* also makes it clear that "fair presentation" requires presentation to the state supreme court, *id.* at 276, 92 S.Ct. at 512–13, which petitioner has not done. In addition, the Third Circuit addressed this issue in a habeas corpus proceeding and held that a defendant who, in a state court criminal proceeding, sought to preclude the trial from being held on Friday, the Orthodox Muslim weekly holy day, and who did not carry her request to

the New Jersey Supreme Court, failed to exhaust her state remedies for purposes of federal habeas corpus. *New Jersey v. Chesimard*, 555 F.2d 63 (3d Cir.1977).

This court is therefore required to conclude that the petition contains unexhausted claims. Thus, assuming, without yet deciding, that petitioner's other claims are in fact exhausted, these three unexhausted claims serve to create a mixed petition which, under the strict rule of *Rose v. Lundy*, would require dismissal so that petitioner can return to state court to give it the first opportunity to rule on his federal constitutional claims.

### III. *Futility*

There are, however, two situations that give rise to an exception to the otherwise strict rule of *Rose*: "An exception is made to the exhaustion requirement ... where the petitioner has no opportunity to obtain redress in the state court or where the state corrective process is so deficient as to render any effort to obtain relief futile." *Gibson*, 805 F.2d at 138 (citing *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981)). This is because "litigants should not be sent on patently futile, circular journeys in formal search of relief which has already been determined unavailable. *Fitzsimmons v. Yeager*, 391 F.2d 849, 857 (3d Cir.1968) (en banc), *cert. denied*, 393 U.S. 868, 89 S.Ct. 154, 21 L.Ed.2d 137 (1968). However, this exception does not mean that a petitioner may avoid state adjudication by failing to pursue his state appeals so as to render his opportunities in state court futile, and then have them heard instead by a federal court. To permit such a strategy "would severely undermine [the] policy" of comity between federal and state courts. *Santana v. Fenton*, 685 F.2d 71, 77 (1982).

■ Bearing in mind the exhaustion requirement together with the futility exception, this court must now determine wheth-

er Grounds Four and Five are exhausted. If neither is exhausted, then the petition must be dismissed. If one or both are exhausted, then this court must determine whether it would be futile to send petitioner back to state court to exhaust the unexhausted claims (or alternatively petitioner would have the option to waive those unexhausted claims and refile a habeas petition containing exclusively exhausted claims). If any of petitioner's unexhausted claims do not fall within the futility exception, then his petition must be dismissed as a "mixed petition" under *Rose v. Lundy*, 455 U.S. at 520, 102 S.Ct. at 1204. If all of petitioner's unexhausted claims fall within the futility exception, then this court may hear the merits of any claim that has been exhausted.

■ An examination of the record reveals that available state remedies for both Grounds Four and Five have been exhausted. Both of these grounds of petitioner's federal habeas corpus petition were initially raised on appeal before the Appellate Division. Brief and Appendix for Appellant–Defendant (before the Superior Court of New Jersey Appellate Division) at 15–24. These claims were raised again in substantially the same form in petitioner's Petition for Certification to the New Jersey Supreme Court, thus affording the state's highest court an opportunity to pass upon these claims and correct any alleged constitutional error. Da–33–43. Ground Five was raised again as part of petitioner's Petition for Post–Conviction Relief before the Superior Court of New Jersey Law Division. *See* Da–51; 56. Because petitioner had already raised this claim before the state supreme court, the fact that this same claim was again raised in a lower state court but not pursued up to the state supreme court does not create another exhaustion requirement; petitioner need only exhaust his claim once. *Brown v. Allen*, 344 U.S. 443, 448 n. 3, 73 S.Ct. 397, 403 n. 3, 97 L.Ed. 469 (1953).[1]

---

1. In his other claim raised on PCR, petitioner challenged the duration of his sentence. Da–51–56. While this argument was also raised on direct appeal and is the substance of Ground Four of his federal habeas petition, the legal

theory advanced on PCR differs from that advanced on direct appeal and in his federal habeas petition in that on PCR, petitioner alleged a violation of state law without implicating the federal constitution. *Id.* As such, this claim

*New Jersey Rule* 3:22–4 bars consideration of grounds not raised in prior proceedings except where the court finds "(a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitutions of the United States or the State of New Jersey." The question here is whether petitioner's unexhausted Grounds One, Two, and Three fit within one of these exceptions. Because these three grounds were all previously raised before the Appellate Division, all could reasonably have been raised in the prior proceeding before the state supreme court. Therefore, these grounds fall outside the scope of the provision articulated in *N.J. Rule* 3:22–4(a).

The New Jersey Supreme Court has held that "[t]he failure of timely assertion, *even of constitutional rights*" may constitute a waiver of those rights. *State v. Del Fino*, 100 N.J. 154, 160, 495 A.2d 60 (1985) (emphasis added) (rejecting defendant's "fundamental fairness" challenge to conspiracy conviction as untimely); *see also, State v. Cerbo*, 78 N.J. 595, 605, 397 A.2d 671 (1975) ("post-conviction proceedings are not a substitute for direct appeal"; denial of PCR would not result in fundamental injustice or deprivation of constitutional right where petitioners failed to raise challenge to admission of wiretap evidence on direct appeal); *State v. McKnight*, 52 N.J. 35, 48, 243 A.2d 240 (1968) (criminal defendant must assert rights—"even though they may be of constitutional origin"—according to court rules; "constitutional rights may be lost if they are not advanced in accordance with rules which afford a fair opportunity to press them"). In the present case, petitioner's unexhausted Grounds One, Two, and Three are identical to those raised on direct appeal to the Appellate Division. Petitioner had a fair opportunity to bring these claims to the New Jersey Supreme Court, but did not. Applying the New Jersey Rules and case law here, it is apparent that even though petitioner has alleged constitutional violations, these are challenges that could have been addressed on direct appeal but were not, and in these circumstances, New Jersey courts will not hear these claims again.

Petitioner's case differs from that in *Gibson v. Scheidemantel*, 805 F.2d 135 (3d Cir.1986). In *Gibson*, the Court of Appeals rejected the federal habeas petitioner's futility argument and sent him back to state court to try to exhaust a claim because his federal habeas petition included within his already-alleged ineffective assistance of counsel claim a "previously unarticulated claim that counsel failed to protect his juvenile status." *Id.* at 138. The present case is also distinguishable from *Santana v. Fenton*, 685 F.2d 71 (3d Cir.1982), where the Court of Appeals noted that the petitioner did not "present the legal basis of the constitutional right-to-testify argument he now asserts in federal court." *Id.* at 74.

In both *Gibson* and *Santana*, the Court of Appeals dismissed the federal habeas petitions to give the state court an opportunity to rule on previously unraised federal claims. Here, petitioner's claims stand in a different posture. Because his current grounds have not been changed or added to since he raised them at the appellate level in state court, and because these same grounds were not then presented to the state supreme court, the New Jersey rules and cases apply to bar his claims from further consideration by the state. Therefore, it would be futile to require that he now attempt to exhaust these claims.

Nor is the petitioner entitled to review in this court of Ground One, Two and Three: " '[w]here a state prisoner has a remedy in the state court but fails to avail himself of it, and later finds himself without a state remedy, he may not have redress through federal habeas corpus.' " *Santana v. Fenton, supra* at 79 (quoting *Whitley v. Steiner*, 293 F.2d 895, 898–99 (4th Cir. 1961)). This court therefore will now con-

---

falls outside the scope of rights which federal habeas corpus protects and therefore this court need not consider it or questions of exhaustion that would be relevant if it were a ground properly before this court. 28 U.S.C.A. § 2254(a) & (c).

sider the merits of petitioner's exhausted claims in Grounds Four and Five.

### IV. *Merits*

██ In Ground Four, petitioner contends that his sentence is manifestly excessive in violation of his federal constitutional rights. In opposition to this, the state Attorney General contends that "sentencing is a matter of state criminal procedure and so long as the sentence imposed falls within statutory bounds does not implicate federal constitutional issues." Answer to Petition for Writ of Habeas Corpus at 11–12 (citing *Jones v. Superintendent, Rahway State Prison,* 725 F.2d 40 (3d Cir.1984)). While there is some support for this view, *see e.g., Grecco v. O'Lone,* 661 F.Supp. 408, 415 (D.N.J.1987), "no sentence is per se constitutional and thus immune from review." *Jackson v. Beyer,* 750 F.Supp. 153, 154 (D.N.J.1990) (citing *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009–10, 77 L.Ed.2d 637 (1983)). "Moreover, Congress has determined that habeas corpus is the appropriate remedy for state prisoners challenging the validity of or length of their confinement." *Id.* (citing *Preiser v. Rodriquez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). This court, therefore can review petitioner's sentence for constitutional violations.

The sentences for each of petitioner's charges fall within the statutory limits as defined by N.J.Stat.Ann. 2C:44–5 and 2C:43–6. A question arises as to whether the sentencing court was correct in its refusal to merge the aggravated assault count with the count charging attempted armed robbery while threatening with a gun. An argument can be made that these two offenses arose out of the same transaction and punishing both would violate the rule against double punishment. In this case however, that argument fails. The New Jersey Appellate Division has addressed this question, and held in a situation similar to this that a first degree robbery count and an aggravated assault count need not be merged where the robbery count was based on an attempt to rob while threatening with a gun, and the aggravated assault count was based on shoot-ing the victim in the thigh moments later. *State v. Carlos,* 187 N.J.Super. 406, 418, 455 A.2d 89 (App.Div.1982); *see also, Jackson v. Beyer,* 750 F.Supp. 153 (D.N.J.1990) (discussion of merger of offenses). In this case, the aggravated assault occurred moments after the attempted armed robbery was foiled. *See* Reasons for Sentence: Troy Toulson ("Sentencing Memo") at Da–9–10.

In Ground Five, Petitioner argues that the trial court improperly penalized him by attributing to him an intent to rob the elderly residents of the nursing home when in fact he only intended to hold up the nursing home's office. He reasons that he could not have intended to hold up the residents since it is unlikely that they would have cash on hand to steal while on the other hand, the office would probably have lots of cash. This court need not consider petitioner's claim because the testimony in the trial record about the defendant and his coconspirators' plans to hold up the nursing home could reasonably be interpreted to indicate an intent to rob its residents, and not just the money that might be held in the office. *See* Brief in Support of Petition for Writ of Habeas Corpus at 22–23. Indeed, as likely as petitioner's speculative logic is the possibility that a nursing home may well do all its business by check and invoice and keep no money on the premises, while the residents keep cash on hand, in pocket, and under their mattresses. *Id.*

██ Petitioner's claim that the sentencing judge based his sentence on other facts not in the record does merit scrutiny. At his sentencing and in the Sentencing Memo, the judge noted that "[a]t the trial defendant's two juvenile confederates testified for the prosecution. Prior thereto defendant made certain threats of harm to dissuade them from testifying. After the testimony of one of them defendant spit in his face and threatened to kill him." Sentencing Memo at Da–10; *see also,* Stenographic Transcript of Sentence ("T–II") at 9.

There is testimony in the trial record tending to show that petitioner did threaten one of his confederates prior to the trial. Stenographic Transcript of Trial by Jury ("T–I") at 138–39. There is also testimony from the petitioner denying that he threatened either of the witnesses. T–I at 157–61. It is not clear from the record whether this fact was established. Moreover, there is absolutely nothing in the record to support the judge's statement that "[a]fter the testimony of one [of the unindicted coconspirators] defendant spit in his face and threatened to kill him." T–II at 9; *see also,* T–I at 109 and 141 (where unindicted coconspirators step down from witness stand). There is also nothing in the Presentence Report about these allegations.

The sentencing judge relied on these assertions to support his conclusion that petitioner is a "violent person with a long history of lawlessness," which in turn supported the petitioner's sentence. T–II at 9; Da–10–11. The Court of Appeals in this Circuit has recently held that a sentencing court violates a defendant's federal due process rights when it relies on disputed information in rendering a sentence and emphasized that this is a violation even where there is other undisputed information on which the sentence could be based. *United States v. Cifuentes,* 863 F.2d 1149 (3d Cir.1988); *accord, State v. Gattling,* 95 N.J.Super. 103, 111, 230 A.2d 157 (App.Div. 1967) and *State v. Leckis,* 79 N.J.Super. 479, 487, 192 A.2d 161 (App.Div.1963). Therefore, this court holds that the state court violated petitioner's federal constitutional right to due process of law when it relied on facts not in the record to justify petitioner's sentence.

## V. *Conclusion*

Petitioner's request for habeas corpus relief must be denied with respect to his conviction, but is granted with respect to his sentence. Petitioner's case is remanded for resentencing. His sentence must be based on facts undisputably established. Before the court can rely on disputed facts, the State has the burden to establish them and petitioner must have an opportunity to rebut them. If the State fails to establish

the disputed facts or chooses in any event not to rely on them, then, upon resentencing, the court would have to consider (if it finds upon resentencing that the maximum term is again appropriate) whether, pursuant to the New Jersey Supreme Court's opinion in *State v. Miller,* 108 N.J. 112, 122 (1987), the factors used to justify sentencing petitioner to the maximum term for each offense can properly be used to justify consecutive sentences as well.