Troy TOULSON, Petitioner,

v.

Howard L. BEYER, Superintendent, New Jersey State Prison, and Robert J. Del Tufo, Attorney General of New Jersey, Respondents.

Civ. A. No. 90–4326(WGB).

United States District Court, D. New Jersey.

July 16, 1993.

Robert J. Candido, Cedar Grove, NJ, for petitioner.

Robert J. Del Tufo, Atty. Gen. of NJ by Linda A. Rinaldi, Deputy Atty. Gen., Div. of Crim. Justice, Trenton, NJ, for respondents.

## OPINION

BASSLER, District Judge:

Troy Toulson ["petitioner"], an inmate at New Jersey State Prison in Trenton, New Jersey, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a). For the reasons stated below, the Court will deny the petition.

## I. BACKGROUND AND PROCEDURAL HISTORY

The petitioner is presently incarcerated based on a five-count state conviction stemming from the commission of an attempted armed robbery. This Court has previously addressed the merits of this petition. This action is here on remand from the United

States Court of Appeals for the Third Circuit. In *Toulson v. Beyer*, 987 F.2d 984 (3d Cir.1993) ["*Toulson II*"] the Third Circuit reversed this Court's grant, in *Toulson v. Beyer*, 792 F.Supp. 352 (D.N.J.1992) ["*Toulson I*"], of petitioner's request for habeas corpus relief with respect to his state court sentence.

In *Toulson I*, petitioner asserted five grounds for habeas relief. 792 F.Supp. at 353. This Court found that petitioner had failed to exhaust his state law remedies with respect to the first three grounds, *id.* at 354–55, but that these three claims were procedurally defaulted under New Jersey law, *id.* at 356, and that requiring their exhaustion prior to hearing the exhausted claims raised in Grounds Four and Five would be futile, *id.* at 355.

This Court then concluded that it could properly hear the merits of the exhausted claims in Grounds Four and Five. *Id.* at 356–57. Petitioner's claim under Ground Four, that the total sentence received was manifestly excessive, was then rejected by this Court. *Id.* at 357. The Court, however, did grant the requested relief with respect to the aggregate state sentence imposed, based on one of the claims asserted by the petitioner in Ground Five. *Id.* at 358.

Ground Five challenges petitioner's sentence on two distinct bases. First, it alleges that the state court improperly imposed separate consecutive sentences, by failing to merge two different counts upon which petitioner was convicted, through reliance on a misinterpretation of the testimony of one witness. 792 F.Supp. at 357. Second, in Ground Five petitioner claims that the sentencing judge relied upon facts not of record in imposing petitioner's sentence. *Id.* It is this second claim of Ground Five that formed the basis of the Court's determination that a remand to state court for resentencing was necessary. *Id.* at 358.

The Third Circuit in *Toulson II* determined that this Court should not have reached the merits of any of the claims asserted in the habeas petition because of a failure to exhaust state remedies. The court, accordingly, remanded the case to this Court with directions to vacate the order granting the writ of habeas corpus and to dismiss the petition without prejudice. *Toulson II*, 987 F.2d at 989.

Upon remand, however, petitioner requested permission to waive the unexhausted claims in Grounds One through Three of the petition, so that the Court could properly readdress the merits of the claims in Grounds Four and Five, which is permissible under *McMahon v. Fulcomer*, 821 F.2d 934, 941 (3d Cir.1987). *See* Letter of Troy Toulson, dated March 26, 1993. The respondents consented to this Court's addressing the merits of the exhausted claims on the papers previously submitted, without the necessity of a refiled petition, and supplemented their original answer and provided additional briefing on one of those claims.

## II. DISCUSSION

### A. Petitioner's Ground Four Claim

In Ground Four petitioner asserts that his aggregate sentence, forty-five years with a twenty-year period of parole ineligibility, is manifestly excessive. Petitioner's brief does not state with any degree of specificity which of his federal constitutional rights are claimed to have been violated. Indeed, the focus of petitioner's claim appears to be that the state court abused its discretion, under New Jersey court precedent, in failing to place a significant emphasis on petitioner's age when considering the aggravating and mitigating circumstances of both the offenses committed and the offender. *See* Petitioner's Brief In Support of Petition for Writ of Habeas Corpus ["Petitioner's Brief"] at 15–20.

As was noted in *Toulson I*, in a habeas corpus proceeding under 28 U.S.C. § 2254(a) this Court has jurisdiction to review both the validity and length of confinement of a state court sentence whenever a constitutional defect in such sentence is properly asserted. *Toulson I*, 792 F.Supp. at 357; *see generally Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The standard of review of such state sentences, however, is very limited. *Grecco v. O'Lone*, 661 F.Supp.

408, 415 (D.N.J.1987). "So long as the punishment imposed is not based upon any proscribed federal grounds, such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." *Id.*

■ Although Ground Four of Toulson's petition does not enumerate with particularity which federal constitutional provisions were allegedly violated, this Court may nonetheless address those cognizable constitutional claims which may fairly be inferred from the substance of its allegations. *See Blackledge v. Allison,* 431 U.S. 63, 75–76, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977); *see also* Rule 4, Rules Governing Habeas Corpus Cases. It is sufficient for this Court to give preliminary consideration to Ground Four of the petition that it "states *facts* that point to a real possibility of constitutional error." *Blackledge,* 431 U.S. at 75 n. 7, 97 S.Ct. at 1630 n. 7 (emphasis added; internal quotations omitted).

In *Toulson I,* this Court treated Ground Four as an assertion that the aggregate sentence imposed on petitioner was manifestly excessive because the sentencing judge did not merge two of the counts upon which petitioner was convicted, the aggravated assault and attempted armed robbery counts, and that sentencing petitioner on each count separately thus violated the Double Jeopardy Clause under the Fifth and Fourteenth Amendments. *Toulson I,* 792 F.Supp. at 357. This argument was rejected, *id.,* and for the reasons there stated, the Court again rejects petitioner's claim and finds no double punishment in his aggregate sentence.

Another constitutional challenge to petitioner's sentence which may be derived from Ground Four is the possibility that the aggregate sentence imposed violates the Cruel and Unusual Punishments Clause of the Eighth and Fourteenth Amendments. In *Solem v. Helm,* the United States Supreme Court held that the Eighth Amendment's proscription of cruel and unusual punishments prohibits sentences that are disproportionate to the crimes committed. 463 U.S. at 290, 103 S.Ct. at 3009.

This view of the Cruel and Unusual Punishments Clause, however, has been called into question in the more recent Supreme Court ruling in *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In that case a plurality concluded that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2686 (opinion of Scalia, J., joined by Rehnquist, C.J.). Another plurality concluded, however, that "the Eighth Amendment does not require strict proportionality between crime and sentence[,] . . . [but] forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at ——, 111 S.Ct. at 2705 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.), *quoting Solem v. Helm,* 463 U.S. 277, 288, 103 S.Ct. 3001, 3008, 77 L.Ed.2d 637 (1983). It is presently unclear which, if either, of these views of the Cruel and Unusual Punishments Clause will ultimately prevail in the higher courts. *See, e.g., United States v. Frazier,* 981 F.2d 92, 95–96 (3d Cir.1992), *cert. den.* —— U.S. ——, 113 S.Ct. 1661, 123 L.Ed.2d 279 (1993).

What is readily apparent from *Harmelin,* however, is that five Justices of the Supreme Court have held that the three-factor analysis of whether a sentence is disproportionate to the crime, established in *Solem,* 463 U.S. at 292, 103 S.Ct. at 3010, is no longer required. *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2686 (opinion of Scalia, J., joined by Rehnquist, C.J.); *id.* at ——, 111 S.Ct. at 2707 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.). It is clear that, under Justice Scalia's analysis, Ground Four does not state a constitutional violation.

■ Even if Justice Kennedy's somewhat broader analysis ultimately prevails, the determination is whether a "comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at ——, 111 S.Ct. at 2707 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.). In applying that analysis to the present matter, it is important to note that the petitioner was convicted on all counts of a five-count indictment. *Toulson I,* 792 F.Supp. at 353. As the third count was merged into the fifth, petitioner was effec-

tively punished for having violated four distinct statutory provisions, and thus it is not true that "the offense [*sic* ] for which he was tried and found guilty was essentially one of a single transaction." Petitioner's Brief at 19. On the contrary, it is only in "the legislative branch of the government ... [where] the substantive power to define crimes and prescribe punishments" lies, *Jones v. Thomas,* 491 U.S. 376, 380, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989), and the New Jersey legislature has done that with regard to the crimes for which petitioner was convicted. Because the legislature of New Jersey has separately defined each offense that petitioner was convicted of, and prescribed separate punishments for each, it is appropriate for this Court, in this context, to consider each offense separately.

■ Viewed in this light, a sentence of ten years for the crime of conspiracy to commit armed robbery (here, of a nursing home), with the possibility of parole in five years, in no way appears grossly disproportionate to the crime, especially when compared to the facts of *Harmelin.* There, Justice Kennedy's plurality found that a mandatory sentence of life imprisonment without possibility of parole for possession of more than 650 grams of cocaine was not grossly disproportionate punishment in violation of the Eighth Amendment. —— U.S. at ——, 111 S.Ct. at 2708 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.); *see also Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (mandatory life sentence, under a state recidivist statute, not grossly disproportionate to the crime of obtaining $120.75 by false pretenses, with prior convictions for fraudulent use of a credit card and passing of a forged check).

Considering petitioner's convictions on the other counts separately, it is similarly quite apparent that sentences of five years, ten years with a five-year parole disqualifier, and twenty years with a ten-year parole disqualifier, are not grossly disproportionate to the respective crimes committed by petitioner:

possession of a handgun, aggravated assault (which consisted of shooting a woman in the face), and attempted armed robbery. Therefore, because this Court concludes that there is no inference of gross disproportionality among any of the sentences imposed on the petitioner, under *Harmelin,* no intra- and inter-jurisdictional comparative analyses of these crimes and their related sentences is warranted. *Harmelin,* —— U.S. at ——, 111 S.Ct. at 2707 (opinion of Kennedy, J., joined by O'Connor and Souter, JJ.). Thus, petitioner's aggregate sentence does not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments.

■ It should also be noted that consideration of whether the sentencing judge abused his discretion in allegedly failing to consider the relative youth of petitioner is not warranted, as such an abuse of discretion, even if it existed, would not rise to constitutional dimensions. *See Grecco,* 661 F.Supp. at 415. Thus, this Court affirms its initial decision in *Toulson I* to deny habeas relief to the petitioner with regard to all claims arising under Ground Four of his petition.

### B. Petitioner's Ground Five Claims

As explained above, Ground Five of Toulson's petition contains two different claims. First, petitioner asserts that when considering the testimony of a 16–year–old male, one of the petitioner's confederates,[1] ["the second accomplice"] concerning a prior plan to rob a nursing home, the sentencing court improperly interpreted that testimony to attribute to petitioner the intent to rob the elderly residents of the nursing home, rather than an intent to rob only the office of the nursing home. 792 F.Supp. at 357. Petitioner asserts that by doing so, and then relying on this "misconstrued" intention to separately sentence him on the conspiracy and attempted armed robbery convictions (as the conspiracy was thus viewed by the court as demonstrating a hardness of heart justifying additional punishment), the court punished the petitioner excessively.

---

1. The state called two 16–year–old males as witnesses against petitioner. Both had entered into plea agreements. As they were both juveniles at the time of the trial in May 1981, the Court will refer to them as "the first accomplice" and "the second accomplice," reflecting the order in which they testified.

As with Ground Four, the petition contains no specific assertion of a federal constitutional violation. However, based upon the substance of the claim, it appears that petitioner is alleging that the sentencing court deprived him of due process, in violation of the Fourteenth Amendment. It has long been held that due process guarantees a convicted criminal defendant the right not to have his sentence based upon "extensively and materially false" information. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. McDowell*, 888 F.2d 285, 290 (3d Cir.1989); *United States v. Cifuentes*, 863 F.2d 1149, 1153 (3d Cir.1988); *Bibby v. Tard*, 741 F.2d 26 (3d Cir.1984). Petitioner's argument can thus best be construed as claiming that the judge's interpretation of the second accomplice's testimony is incorrect and resulted in a sentence based on "extensively and materially false" information.

In *Toulson I*, after a thorough review of the record this Court determined that the record did in fact contain a basis for the sentencing court's construction of the testimony of the second accomplice concerning the intent to rob the nursing home, and thus factually rejected petitioner's due process claim. *Toulson I*, 792 F.Supp. at 357. As no new facts have been brought to the attention of the Court, it again finds that petitioner's first argument for relief under Ground Five is without merit.

Ground Five of Toulson's petition, secondly, asserts that the state sentencing judge relied on facts not in the record in imposing the sentence under which he is currently incarcerated. More particularly, petitioner refers to the transcript of the sentencing hearing ["T–II"], where the judge noted that "[a]t the trial defendant's two juvenile confederates testified for the prosecution. Prior thereto defendant made certain threats of harm to dissuade them from testifying. After the testimony of one of them defendant spit in his face and threatened to kill him."

T–II, at 9. Petitioner argues, in effect, that because there is nothing in the record to substantiate these remarks by the sentencing judge, his federal due process right not to be sentenced based on extensively and materially false information, under *Townsend v. Burke*, was violated.[2]

In *Toulson I*, this Court first determined that there was evidence in the record (i.e., testimony from the state court trial) that both supported and contradicted the sentencing judge's finding that petitioner had threatened at least one of the confederates prior to trial. 792 F.Supp. at 358. Furthermore, this Court noted there was nothing in the record concerning the judge's statement about the "spit-and-threat" incident. This Court there concluded that, from the record, whether these threats had actually occurred was not clear. *Id.*

Because the Third Circuit has remanded this case, and because petitioner has now waived his unexhausted claims, this Court has a second opportunity to review the merits of Grounds Four and Five. As explained earlier, the Court finds no reason to disturb its earlier conclusions concerning Ground Four and the first argument in Ground Five. However, in re-examining the merits of the second argument in Ground Five, the Court finds that it overlooked two key elements of law in its earlier analysis.

First, the Court finds it failed adequately to consider the requirement that the false information upon which a state court judge relies must be not merely "false," but *"extensively and materially* false" for a due process violation to occur under *Townsend v. Burke*, 334 U.S. at 741, 68 S.Ct. at 1255 (emphasis added). Second, the Court did not properly consider that in a habeas proceeding, under 28 U.S.C. § 2254(d), "the factual findings of state courts are presumptively correct." *Hakeem v. Beyer*, 990 F.2d 750, 766 (3d Cir.1993).

---

**2.** Again, petitioner actually phrases his objection to the use of these remarks by the sentencing judge in terms of New Jersey caselaw. The focus of the point raised in the petition is that neither the Presentence Report nor the transcripts of the trial demonstrate that petitioner threatened and spit at his confederate. To the extent that this claim invokes any state procedural right, which may be in addition to petitioner's federal due process right, such a claim is not cognizable by this Court in a habeas corpus proceeding, and is therefore not addressed.

Having carefully re-examined the relevant law, and conducted a second analysis of the record, the Court concludes that it must re-consider its earlier decision to grant habeas relief on the second argument of Ground Five. For the following reasons, the Court will instead deny the petition on both Grounds Four and Five. The Court also determines, as explained below, that no evidentiary hearing is necessary. *See* Rule 8(a) of the Rules Governing Habeas Corpus Cases.

Respondents point out, and rightly so, that in determining the existence of the pre-trial threats by petitioner the state trial judge, who was also the sentencing judge,[3] necessarily relied heavily on the credibility of the two accomplices who testified at trial concerning the threat and discounted petitioner's contradictory testimony. Respondents argue, again correctly, that such a credibility determination generally must be given deference by this Court when considering the habeas petition under 28 U.S.C. § 2254(d).

■ The Court recognizes that not all factual findings by a state judge qualify for the § 2254(d) presumption. A district court, before it may consider findings of fact made by a state court, must make sure four prerequisites are satisfied: (1) There was a hearing on the merits of the factual issue, (2) made by a state court of competent jurisdiction, (3) in a proceeding to which the petitioner and the state were parties, (4) evidenced by a written finding, opinion or other reliable and adequate written indicia. *See Reese v. Fulcomer*, 946 F.2d 247, 254 (3d Cir.1991) (citing *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963)).

■ The Court concludes that respondents have met the four § 2254(d) prerequisites. The record shows the state court had competent jurisdiction, that petitioner and respondents were parties to the proceeding and that the judge's findings were evidenced in writing in the state court's "Reasons for Sentence," at Da 9–11. While the state court did not conduct a formal evidentiary hearing on the existence of the pre-trial threats against the two witnesses, such a separate hearing is not required under the statute. *See Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).

In *Sumner*, the Supreme Court stated that a habeas petitioner had received a "hearing" within the meaning of § 2254(d) when he was given an opportunity to be heard on the factual issue in question, when both the petitioner and the state were formally before the court, and when the court had resolved the factual issue in writing. *Id.* at 546, 101 S.Ct. at 768. Here, petitioner and the state were formally before the Court, both petitioner and the state had an opportunity to be heard on the factual issue, and the court resolved the issue in writing.

■ Having concluded that the four prerequisites for § 2254(d) deference apply, the Court may presume that a factual finding by a state court is correct unless petitioner establishes, or it is otherwise shown, or the respondents admit, that one or more of the eight exceptions apply. The § 2254(d) exceptions are:

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court hearing;

(6) that the applicant did not receive a full, fair and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

---

**3.** Respondents' Brief at 10. This point is not contested by the petitioner.

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

28 U.S.C. § 2254(d)(1)–(8).

Looking at the eight exceptions, the Court finds that (1) the state court adequately resolved the merits of the factual issue, (2) its factfinding procedure was adequate to afford a full and fair hearing, (3) the material facts were adequately developed at trial, (4) the state court had competent jurisdiction, (5) the petitioner was properly represented by counsel, (6) received a full, fair and adequate hearing in the state court, and (7) was not otherwise denied due process, and (8) the court's fact findings were supported by the record as a whole.

A review of the transcript of the trial, which took place on May 14, 18 and 19, 1981, ["T–I"] shows that petitioner had ample opportunity to present his version of the events related to the alleged pre-trial threats. Furthermore, there is extensive evidence in the record to support the judge's findings that petitioner made pre-trial threats to both accomplices.

During the direct examination, the first accomplice testified that, on the day after the alleged armed robbery and shooting, he saw respondent in a parking lot:

A. I was going across the lot. I seen Troy in a car with his girl, and he called me over there. We went to [the second accomplice's] house. He told me if I snitched he was going to kill me.

Q. Who told you that?

A. Troy Toulson.

T–I, at 92. Later on direct examination, the first accomplice testified that petitioner called him at home:

Q. What did he [petitioner] say?

A. He said, "You better tell the judge I didn't shoot the lady," . . . .

*Id.* at 93.

When the second accomplice took the stand, he testified on redirect examination that petitioner had sent him letters:

Q. In those letters did he [petitioner] ever talk to you about the case, about coming to court?

A. Yeah. One letter.

Q. What did he say?

A. He said something, you know, something about, you know, testifying, he wanted me to say that he wasn't there. And I showed it to a couple of my friends up there, you know, and they said I'd be a fool if I go ahead and say he wasn't there.

Q. Did he ever say anything else to you about what would happen if you went to court and didn't testify that he wasn't there?

A. He said something about, he said me and him, we cool, you know, and he hate to go to war with me.

Q. He hate to go to war with you?

A. Yeah.

*Id.* at 138–39.

The Court finds that the state court judge, who also had the benefit of observing the demeanor of each witness, could reasonably have concluded the first accomplice was telling the truth when he testified that petitioner had threatened to kill him if he "snitched" in court. Furthermore, the Court finds the judge could reasonably have concluded that the second accomplice was truthful when he testified that petitioner had warned him about "going to war" if the second accomplice testified against him. The judge also could reasonably construe "going to war" as a threat of harm.

In addition, petitioner had ample opportunity to present his version of events. After the accomplices finished their testimony, petitioner was asked on direct examination by the defense about his relationship with the first accomplice:

Q. Are you familiar with [the first accomplice] today?

A. Today was the only time I seen him. As far as me knowing him personality or anything, I don't know him whatsoever.

Q. Did you ever contact him after you were arrested for this crime?

A. No, sir.

Q. Did you ever speak to him personally?

A. No, sir.

Q. Did you ever write him any letter?

A. No, sir.

*Id.* at 148–49.

Petitioner was then asked about his contact with the second accomplice:

Q. Now, Mr. Toulson, did you have any conversation with [the second accomplice] concerning this situation after you had been arrested?

A. I had wrote him a letter and asked him why he implicated my name.

Q. Did he tell you?

A. He telling me that's not being a Muslim, seeking fault with him. I told him it's not being a Muslim implicating my name in something I didn't have nothing to do with.

*Id.* at 149–50. On cross examination, petitioner was questioned again about his contact with the first accomplice:

Q. Isn't it true that you saw [the first accomplice] and told him if he snitched you would do something to him?

A. No ma'am, I didn't see [him].

*Id.* at 154.

Finally, at the end of cross examination, petitioner was again questioned about his alleged threats:

Q. Isn't it true that you threatened both [accomplices]—

A. No, ma'am.

Q. —against coming to court to testify against you today?

A. No, ma'am.

*Id.* at 159.

The above excerpts from the record show that petitioner was able to present his version of events. In particular, they show that petitioner denied ever speaking with the first accomplice prior to trial, much less threatening to kill him. They also demonstrate that petitioner denied ever making any threats, in a letter or otherwise, to the second accomplice.

Where the factfinding of a state court is presumed correct, as here, the petitioner must establish the state court's factual error by "convincing evidence," instead of the preponderance of the evidence burden petitioner would carry, absent the presumption. *Sumner,* 449 U.S. at 551, 101 S.Ct. at 771. In determining whether petitioner has met his burden, the district court may conduct an evidentiary hearing to resolve material factual disputes, pursuant to Rule 8(a) of the Rules Governing Habeas Corpus Cases. For the following reasons, the Court concludes such an evidentiary hearing is not necessary.

In *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), the Supreme Court listed six instances when a federal court *must* conduct such an evidentiary hearing. *But see Keeney v. Tamayo–Reyes,* —— U.S. ——, —— – ——, 112 S.Ct. 1715, 1717–21, 118 L.Ed.2d 318 (1992) (modifying the fifth *Townsend* factor). The Court recognizes there is significant overlap between these six *Townsend v. Sain* mandatory hearing factors and the eight § 2254(d) exceptions discussed above. *See Reese v. Fulcomer,* 946 F.2d 247, 254 n. 3 (3d Cir.1991) ("relationship between *Townsend* and the § 2254(d) exceptions is still a murky one.") (citation omitted). This overlap, however, does not affect the Court's analysis here.

*Townsend v. Sain* held that a federal court must grant an evidentiary hearing to a habeas applicant if:

(1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) the material facts were not adequately developed at the state-court hearing; or

(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

372 U.S. at 313, 83 S.Ct. at 757. In *Keeney v. Tamayo–Reyes,* —— U.S. at ——, 112 S.Ct. at 1721, the Supreme Court modified the fifth factor by holding that when it is the petitioner who fails to develop the facts in state-court proceedings, that petitioner is entitled to a hearing only by showing cause for the failure to develop the facts and actual prejudice resulting from that failure.

The fourth of the sixth factors does not apply here, as petitioner has not called the Court's attention to any newly discovered evidence. The Court has already determined that none of the other five factors apply. Therefore, the Court need not, and will not, hold an evidentiary hearing under Rule 8(a).

In summary, the Court finds that it is appropriate to defer to the fact finding of the state court that petitioner made "certain threats of harm" to the two accomplices. T–II, at 9. This Court holds that the state court's factual finding that the threats actually occurred must be respected, and its use of that finding during the sentencing hearing, T–II at 9, and in the Sentencing Memo, Da–10, did not violate petitioner's due process rights under the Fourteenth Amendment.

■ The Court may now turn to the "spit-and-threat" incident. In *Toulson I,* the Court determined that the sentencing judge relied on this incident, which allegedly occurred during trial, to support his conclusion that petitioner is a violent person who necessitates isolation from lawful individuals. 792 F.Supp. at 358. It is clear that this formed one basis for the aggregate sentence imposed by the judge. *Id.; see also* T–II, at 9.

As noted above, it is settled law that sentencing on the basis of extensively and materially false information violates federal due process rights. In *Townsend v. Burke,* the Supreme Court held that a state court had denied a prisoner, who was unrepresented by counsel at sentencing, due process when it used as a basis for sentencing a prior charge of receiving stolen property, which had been dismissed, and prior charges of larceny and unlawful entry to steal, when the defendant had been found not guilty of those charges. 334 U.S. at 740, 68 S.Ct. at 1255. The court made clear that what made the sentence constitutionally invalid was "the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide." *Id.*

*Townsend v. Burke* provided little general guidance as to how a federal district court considering a habeas petition is to analyze a claim that the state court sentence was based on materially false information. In *Bibby v. Tard,* 741 F.2d 26 (3d Cir.1984), however, the Third Circuit set forth in some detail the district court's responsibility in assessing such a claim. *Bibby* involved the habeas application of a state prisoner who had been convicted of robbery and various handgun charges under New Jersey law. *Id.* at 28. The petitioner claimed that his sentencing violated due process because the written statement of reasons for his sentence, contained in a sentencing memo, relied on an assertion that the petitioner had "a long criminal record, including prior armed robberies", *id.* at 28, when, allegedly, no such prior convictions existed. Significantly, at the sentencing hearing, which apparently occurred prior to the time when petitioner's counsel had access to the sentencing memo, the sentencing judge made reference to the petitioner's prior record, but no mention of any prior armed robberies was made. *Id.* at 28, 30.

The Third Circuit noted that because the sentencing memo becomes a part of the judgment of conviction under New Jersey law, it "enjoys sufficient importance in the New Jersey sentencing scheme that it is to be regarded as definitive evidence of the sentencing judge's reasoning." *Id.* at 30. Based on that fact, and the inconsistency between the sentencing memo and the judge's remarks at the sentencing hearing, the court determined that the district court should have held an evidentiary hearing to determine whether the petitioner in fact had prior armed robbery convictions, and thus remanded the action to the federal district court for such a hearing. *Id.* at 32.

In determining that an evidentiary hearing was required in *Bibby,* the Third Circuit set down several general principles for adjudi-

cating habeas petitions where a state prisoner claims that the sentence imposed was based upon materially false information under *Townsend v. Burke*. First, it is plain from the court's opinion that if the sentencing judge did not actually rely on the disputed information, no due process violation may be found. *Bibby*, 741 F.2d at 29–30. Next, the court held that "[a]n evidentiary hearing is required if there is a dispute of material fact—that is, facts which, if true, would entitle the petitioner to relief". *Id.* at 30. Finally, the court noted that if a petitioner has been afforded a full and fair evidentiary hearing in the state court, irrespective of the materiality of the disputed facts, then no evidentiary hearing is required in federal court. *Id.*

Applying these principles to the present petition, the Court is now convinced that petitioner's due process rights were not violated by the sentencing court's inclusion, in both the sentencing hearing and the sentencing memo, of remarks regarding the "spit-and-threat" incident. Although it cannot seriously be disputed that the sentencing judge relied on this incident in sentencing the petitioner, as it was mentioned as one reason for the sentence both at the sentencing hearing and in the sentencing memo, *see Toulson I,* 792 F.Supp. at 358, the Court believes that this reliance was not material to the sentence which petitioner received.

Neither *Townsend v. Burke* nor *Bibby* describe in general terms what constitutes a material factor in the imposition of a sentence, especially when, as here, the sentencing judge details many factors which lead to the sentence imposed. See Sentencing Memo at Da 9–11[4]; T–II at 4–7 (transcript of sentencing hearing)[5]. As quoted above, however, *Townsend v. Burke* does speak of a sentence being based on information "exten-

sively and materially false". And in both *Townsend* and *Bibby*, unlike the present case, the information which the petitioner disputed was the alleged existence of more than one prior criminal conviction, information that a sentencing judge would certainly consider more substantial in determining the appropriate sentence than a single incident which allegedly took place in the courtroom during trial. Thus, the sentencing judge's mention of the "spit-and-threat" incident, even if it did not occur, was not of sufficient magnitude, in relation to the sentence imposed and the other reasons for the sentence expressed in the sentencing memo, to create "a foundation [for the sentence] so extensively and materially false", *Townsend v. Burke,* 334 U.S. at 741, 68 S.Ct. at 1255, as to rise to the level of a constitutional violation.

*Bibby* provides some insight into how the Court may determine whether the "spit-and-threat" incident, standing alone, constitutes extensively and materially false information. In *Bibby,* the Third Circuit considered the petitioner's argument that the sentencing judge had violated his due process rights by basing the sentence, in part, on Bibby's holding a loaded gun to the victim's neck during the robbery in question. 741 F.2d at 31. As the state did not dispute that the gun actually had *not* been loaded, the question was whether the misinformation about the gun being loaded was sufficiently "material" to raise due process concerns. *Id.*

Finding that mere misinformation about the gun being loaded did not amount to a due process violation in the sentencing, the Third Circuit observed:

> As to this item of misinformation, unlike the alleged misstatement of Bibby's record, we cannot say that by itself it was material under the principle of *Townsend*

---

**4.** Other reasons for the sentence received by the petitioner, as detailed in the Sentencing Memo, were:

> Defendant has a prior adult conviction for a theft offense. The present offense was committed while defendant was under a suspended sentence. He has had the benefit of attempted rehabilitation at the Youth Reception and Corrections Center. He has remained lawless. His juvenile record is lengthy. He has a prior armed robbery and weapons conviction.

Da 10.

**5.** The Court notes that at the sentencing hearing, after stating his finding of the aggravating factors of the offense, the sentencing judge read the Sentencing Memo in its entirety for the record. T–II 7–11. One aggravating factor which the judge found was "a substantial risk that the defendant will commit another crime." *Id.* at 5.

*v. Burke, supra.* The court's statement refers to the "aggravating circumstances" of Bibby's holding the gun at the neck of his female victim while his codefendant cleaned out the safe. We believe that the court's statement can reasonably be interpreted to be an expression of the court's concern that the victim was placed in fear. This is clear from the court's stress on the facts that the gun was held "at the neck" of the victim and that she was "female," in addition to the fact that this was done while the other defendant rifled the safe. These facts add up to a situation creating fear in the mind of the victim. Moreover, *we do not believe that the victim's fear would have been materially lessened had she perceived that Bibby's gun was not loaded. Thus whether the gun was loaded or not would not be material to this concern.*

*Id.* (emphasis added).

In this case, the judge summarized his various reasons for sentencing petitioner to an extensive aggregate term by saying: "In short, we have a violent person with a long history of lawlessness." T–II, at 9. The "spit-and-threat" incident by itself, in the Court's view, does not materially affect that conclusion.

The state court had already heard testimony, as reported above, by the first accomplice, who had said that petitioner had threatened to kill him if he "snitched." Therefore, the threat portion of the "spit-and-threat" incident adds nothing significant to the judge's rationale. Furthermore, the spitting at the witness, assuming it never happened, is not extensive or material enough to implicate due process concerns, in light of the judge's explicit reliance on the petitioner's prior adult conviction, his lengthy juvenile record, including armed robbery and weapons convictions, plus the testimony of both accomplices that petitioner had threatened them with harm.

Lastly, the Court believes that some brief remarks with regard to the "reliance" and "materiality" elements of a "materially false information" due process claim, as construed by the Third Circuit in *United States v. Cifuentes,* 863 F.2d 1149 (3d Cir.1988), are required. *Cifuentes* was relied on by this Court to support a remand for resentencing in *Toulson I,* 792 F.Supp. at 358.

In *Cifuentes,* a convicted federal defendant appealed his sentence, contending that it had been imposed without due process of law. The contention made there was that the presentence report contained three items of information that were inaccurate, and that three days prior to sentencing the government inaccurately advised the court, in a letter, that the defendant had been deceitful and uncooperative with the government, in contravention of his plea agreement. 863 F.2d at 1153. The Third Circuit vacated the sentence and remanded the case to the district court so that it could hold an evidentiary hearing to resolve the disputed information. *Id.* at 1155–56.

Although the *Cifuentes* court made no mention of its analysis in *Bibby,* presumably because *Bibby* was a habeas case brought under 28 U.S.C. § 2254, and *Cifuentes* was a direct appeal of a federal sentence, the basic analysis applied in both in cases is substantially the same. After reviewing the sentencing record, and particularly the judge's comments at the hearing, the court in *Cifuentes* concluded that the record was ambiguous as to whether the judge had actually relied upon the disputed information in the pre-sentence report and the government's letter to the court. 863 F.2d at 1155. The court's primary basis for ordering a remand to the district court, then, was to allow the district court to state explicitly whether or not it had relied on the disputed information. *Id.* Only if the district court in fact relied upon the disputed information would a hearing then be necessary to determine whether the pre-sentence report and letter from the government were materially false. *Id.*

*Cifuentes* thus differs factually from the present case with regard to the sentencing judge's reliance on disputed information in imposing the sentence challenged on due process grounds. Whereas in *Cifuentes* the record was ambiguous as to whether the sentencing judge had relied on the information contested as inaccurate, in the instant case it is obvious that the state judge did in fact rely on the information now disputed by petition-

er when determining petitioner's present sentence. The basis for the remand to the sentencing court in *Cifuentes*, then, does not exist in the present matter.

Next, with respect to the "materiality" element of a "materially false" due process claim, it should be noted that in *Cifuentes*, as in *Bibby*, the Third Circuit made clear that there can be no due process violation unless the disputed information relied on at sentencing is material to the sentencing court's determination. *Cifuentes*, 863 F.2d at 1153 ("Cifuentes is not entitled to a hearing on the factual issues his objections raise if the sentencing court did not consider the disputed information material to its sentence."). Thus, this Court's prior statement, in *Toulson I*, that "[t]he Court of Appeals [in *Cifuentes*] has recently held that a sentencing court violates a defendant's federal due process rights when it relies on disputed information in rendering a sentence and emphasized that this is a violation even where there is other disputed information on which the sentence could be based", 792 F.Supp. at 358, was not entirely accurate because it did not consider the underlying presumption in *Cifuentes*, that the disputed information was *material* to the imposition of sentence.[6] Therefore, because the Court has already determined that in the present case the sentencing court's reliance on the "spit-and-threat" incident was not material to the sentence as actually imposed, *Cifuentes* is distinguishable, and the Court's reliance on it in *Toulson I* was misplaced.

As the Court has concluded that the "spit-and-threat" incident, by itself, is not material enough to the judge's sentencing rationale to trigger due process concerns, there is no need for an evidentiary hearing on that issue. The Court has already determined that no evidentiary hearing is needed on the "threats-prior-to-trial" issue. Therefore, the Court will deny the habeas relief requested in Grounds Four and Five.

---

6. In *Cifuentes* the court never addressed the materiality of the disputed information directly, but did note that "our holding [is] that the government must show non-reliance on disputed facts

### III. CONCLUSION

For all of the foregoing reasons, the Court denies the requested habeas corpus relief in Grounds Four and Five of the petition. As Grounds One through Three were waived by the petitioner, they are considered abandoned, and the Court thus denies all relief with respect to all claims asserted in the petition.

*material* to the exercise of judicial discretion in sentencing". 863 F.2d at 1155. (Emphasis added).